**Stephen L. WILLERS, Plaintiff and Appellee,**

v.

**J.L. WETTESTAD, Defendant and Appellant.**

No. 18258.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 7, 1993.

Decided Jan. 5, 1994.

Lon J. Kouri of May, Johnson, Doyle & Becker, P.C., Sioux Falls, for plaintiff and appellee.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendant and appellant.

TUCKER, Circuit Judge.

Following a trial to the court, the court entered judgment in favor of Stephen L. Willers and against Jerry Wettestad. The trial court found that a stock sale agreement between the parties created an express trust, that Wettestad breached his fiduciary duties as trustee by failing to act in good faith and to preserve the trust assets and that Stephen Willers was damaged as a result in the sum of $20,000. Defendant Wettestad appeals. We affirm.

## FACTS

Jerry Wettestad (Wettestad), worked for several years as the branch manager of Siouxland International Trucks, an International Harvester truck dealership in Sioux Falls. Wettestad was acquainted with the Willers family, including Steven Willers (Willers). The Willers family owns and operates Willers Truck Service, and Wettestad sold to Willers Trucks several International Harvester trucks. Wettestad also socialized with the Willers family, including Stephen, his father, Kip, and Stephen's brother, Kim. Later, after his employment terminated with Siouxland International Trucks, Wettestad also worked for Willers Trucks.

In 1982 International Harvester (later known as Navistar) gave Jerry Wettestad an opportunity to gradually purchase the Siouxland International Truck dealership (Siouxland) in Sioux Falls, South Dakota through a program called Dealcor. Wettestad was employed as President of Siouxland and was also the manager of day-to-day operations at the business. The Dealcor program allowed only employees of Navistar to purchase stock in a franchise store such as Siouxland. Wettestad approached Steve Willers about jointly purchasing Siouxland International Trucks. Wettestad and Willers reached an agreement that was formalized in a Stock Sale Agreement which was signed by both parties on September 3, 1982. Willers had no employment relationship with Siouxland and he had no involvement in the day-to-day operations of the business. Willers paid Wettestad $20,000 for stock in Siouxland and in return Wettestad transferred to Willers fifty percent of all stock in Siouxland owned by Wettestad.

The Stock Sale Agreement expressly provided that Wettestad would act at all times as trustee for Willers with respect to Willers' ownership of fifty percent of the stock of Siouxland, because Willers could not own the stock in his own name. Wettestad further acknowledged in the agreement that he was "acting in a fiduciary capacity as trustee for Willers and agree[d] to fully and faithfully discharge such responsibilities at all times."

Siouxland did not prosper, and Wettestad failed to meet International Harvester's demands to increase the profitability of the dealership. Wettestad encountered numerous problems with Navistar, including disagreements over the monthly rent, inventory, computers and Wettestad's relationship with the business office manager.

At a special board meeting in August 1985 held to address Siouxland's lack of profitability, Navistar demanded Wettestad increase the dealership's profits. Later, in a letter from Navistar dated March 13, 1986, Wettestad was presented with two options: (1) to resign immediately and recover some of the stock value; or (2) to remain as president and stand the risk of removal with the chance of further deterioration of the stock's

book value and a risk of complete loss of the investment in Siouxland.

Wettestad chose to remain as president of Siouxland. He was eventually terminated because profits remained low. As a result Willers and Wettestad lost the value of the stock, save one dollar that was paid to Wettestad. Despite frequent conversations with Willers, Wettestad failed to inform Willers that Siouxland International was in financial trouble, that International Harvester had threatened to take the dealership from Wettestad or that the stock value could be reduced to nothing. The difficulties between Wettestad and Navistar were not revealed to Willers until July 1986 when Navistar withdrew the dealership from Wettestad.

Following his termination of employment at Siouxland, Wettestad commenced a lawsuit against Navistar. On Wettestad's request, Willers agreed to split the costs of the lawsuit against Siouxland and Navistar to seek recovery of Wettestad and Willers' initial investments in Siouxland International Trucks. Wettestad ultimately settled the lawsuit against Navistar and Siouxland International Trucks without advising Willers and Wettestad refused to disclose the terms of the settlement to Willers. The settlement terms of the lawsuit provided a benefit to Wettestad personally, including a cash settlement of $35,000. In April 1991 Willers sued Wettestad for breach of trust and failure to perform his fiduciary duties.

At the conclusion of the trial and after reviewing written briefs from counsel for both parties, the court concluded that the Stock Sale Agreement between Willers and Wettestad was a lawful contract. Further, the court concluded the agreement created an express trust in which Wettestad expressed the intention to create a trust and to act as trustee for the shares of stock in Siouxland International Trucks, Inc. in order to protect Willers' ownership interest. The court determined that as trustee, Wettestad owed fiduciary duties to Willers and that Wettestad's primary duty was to preserve trust assets. The court concluded that Wettestad's actions constituted a breach of his trust and fiduciary duties because he failed to act in good faith by not attempting to preserve the trust assets on behalf of Willers. The court stated that the trustee's liability for breach of trust was personal; therefore, Wettestad was required to restore personally the corpus of the trust and Willers was entitled to recover from Wettestad the money he invested in the stock of Siouxland as represented in the Stock Sale Agreement. A judgment in the amount of $20,360.48 for Willers was entered by the Clerk of Courts in Minnehaha County on January 21, 1993.

## STANDARD OF REVIEW

■ This Court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *Dougherty v. Dougherty,* 482 N.W.2d 320 (S.D.1992); *Jankord v. Jankord,* 368 N.W.2d 571 (S.D.1985). In applying the clearly erroneous standard, this Court's function is not to decide factual issues de novo. The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence the Court is left with a definite and firm conviction that a mistake has been committed. *People in Interest of H.M.,* 474 N.W.2d 267 (S.D.1991); *Maryhouse, Inc. v. Hamilton,* 473 N.W.2d 472 (S.D.1991). Due regard shall be given to the opportunity the trial court had to judge the credibility of witnesses. *State By and Through DOT v. Garvin,* 456 N.W.2d 779 (S.D.1990); *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975).

## DECISION

### I. AN EXPRESS TRUST WAS CREATED BY AGREEMENT OF THE PARTIES.

■ An express trust is defined at SDCL 55–1–3 as "an obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another." SDCL 55–1–3 (1988). Such an obligation is created when "the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty: (1) an intention on the part of the trustor to create a trust; and (2) the subject, purpose, and beneficiary thereof." SDCL 55–1–4 (1988).

The Stock Sale Agreement, signed by both Wettestad and Willers, expressed the parties' intention to create a trust when it stated: "Wettestad ... shall at all times act as trustee for Willers with respect to Willers' ownership of fifty percent of the stock of Siouxland International Trucks, Inc., such trust to continue until all shares beneficially owned by Willers shall have been transferred into his name." The subject of the trust is Willers' ownership interest in the shares of stock. The purpose of the trust is the protection of Willers' interest until all shares beneficially owned by Willers were transferred into his name. The beneficiary of the trust is Willers.

A trust may be created for any purpose for which a contract may lawfully be made. SDCL 55–1–1 (1988). Therefore, a trust can be created for any purpose that is not illegal. *Applegate v. Brown,* 168 Neb. 190, 95 N.W.2d 341 (1959). It is the general rule that a contract which is contrary to statutory or constitutional law is invalid and unenforceable. *Waara v. Kane,* 269 N.W.2d 395 (S.D.1978); *Hieb v. Opp,* 458 N.W.2d 797 (S.D.1990), (citing *State ex rel. Meierhenry v. Spiegel, Inc.,* 277 N.W.2d 298 (S.D.1979)). As no statutory or constitutional bar prohibits the transaction between Willers and Wettestad, the trial court correctly found that the trust agreement was valid and not invalid as against public policy.

Generally, a person who is of full capacity may be a trustee. 76 Am.Jur.2d *Trusts* § 241 (1992). Therefore, contrary to Wettestad's assertion, he is capable of serving as trustee. While Wettestad's service as trustee may have conflicted with his contractual agreement with International Harvester, the court correctly concluded that he was not prohibited by law from acting as trustee on behalf of Willers.

## II. WETTESTAD OWED FIDUCIARY DUTIES TO WILLERS AND HIS PRIMARY DUTY WAS TO PRESERVE THE TRUST ASSETS.

A trustee is required to act in the highest good faith toward the trust beneficiary. SDCL 55–2–1 (1988); *Restatement (Second) of Trusts* § 2 (1959). A trustee is under a duty to administer the trust solely in the interest of the beneficiary. *Restatement (Second) of Trusts* § 170 (1959). Additionally, a trustee owes the beneficiary of a trust the duty of loyalty. "The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." *Restatement (Second) of Trusts* § 170 (1959). A trustee's duty to preserve the trust assets is in accord with the fundamental duty of loyalty and fidelity owed by every trustee to his beneficiary. *In re Johnson's Estate,* 75 S.D. 595, 71 N.W.2d 77 (1955). This Court has determined previously that a trustee's first duty as a fiduciary is to act in all things wholly for the benefit of the trust. *Schroeder v. Herbert C. Coe Trust,* 437 N.W.2d 178 (S.D.1989); *Restatement (Second) of Trusts* §§ 175, 176 (1959).

The evidence demonstrates that Wettestad violated his duties as trustee in this case. Wettestad knew Navistar's displeasure with him and his management of Siouxland jeopardized the stock for which he was trustee. Wettestad knew as early as March 13, 1986 that Navistar proposed an option which included preservation of some of the stock value if Wettestad resigned as president of Siouxland. Wettestad's position as trustee for Willers may have obliged him to act in favor of Willers, even when such action resulted in his own detriment. It certainly required full disclosure of all relevant facts. Then, when Wettestad undertook a lawsuit against Navistar, he failed to inform Willers of all settlement offers or the terms of a settlement eventually reached by Wettestad. Wettestad pursued and accepted a settlement that benefitted him personally, including a cash settlement of $35,000.

## III. THE TRIAL COURT CORRECTLY AWARDED DAMAGES.

The beneficiary of a trust is entitled to sue in equity to compel the trustee to redress a breach of trust. *Restatement (Second) of Trusts* § 199(c) (1959). If the trustee commits a breach of trust, he is chargeable with any loss or depreciation in value of the

trust estate resulting from the breach of trust. *Restatement (Second) of Trusts* § 205(a) (1959); 76 Am.Jur.2d *Trusts* § 367 (1992). The remedies stated in § 205 of the *Restatement (Second)* are also applicable when the trustee violates his duty of loyalty. *Restatement (Second) of Trusts* § 206 (1959).

 The amount of damages awarded by the trial court is a factual issue governed by the clearly erroneous standard. *Gross v. Connecticut Mut. Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985). As discussed above, evidence supports the trial court's conclusions that Wettestad violated his fiduciary duty to preserve trust assets and his duty of loyalty to Willers as trust beneficiary.

Finally, Wettestad claims that the trial court awarded a disproportionate "share" of Wettestad's damages in the lawsuit against Navistar to Willers. Wettestad mischaracterizes the trial court's basis for awarding damages to Willers. Willers' damages result from Wettestad's violation of his fiduciary duties to Willers, not from any interest Willers may have had in a lawsuit against Navistar.

The trial court was not clearly erroneous when it found Willers' damages were $20,000, the amount of the original corpus of the trust representing the value of Willers' investment in Siouxland International Trucks.

Affirmed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.

TUCKER, Circuit Judge, for MILLER, C.J., disqualified.