2000 SD 24

**In the Matter of the ESTATE OF Elmer STEVENSON, Deceased, and The Elmer Stevenson Trust.**

**No. 20984.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided Feb. 16, 2000.

Kenneth D. Bertsch and Kent E. Lehr of Bertsch Law Office Menno, South Dakota, Attorneys for appellant Clara Stevenson.

Thomas E. Alberts, Avon, South Dakota, Attorney for appellee Tamara K. Luke.

SABERS, Justice.

[¶ 1.] Clara Stevenson appeals the trial court's determination that Tamara K. Luke, acting as trustee, was specifically authorized by the trust instrument to lease trust property to herself, her husband, or relative. We reverse and remand.

## FACTS

[¶ 2.] Elmer Stevenson established the Elmer Stevenson Trust on August 8, 1990 and funded it with all his property. Elmer died on September 15, 1992. Pursuant to the terms of the trust, Elmer's surviving

wife, Clara, is the primary beneficiary with a life estate interest in the estate. Clara's granddaughter, Tamara, is the second beneficiary as well as the sole trustee.*

[¶ 3.] The trust assets consisted of 1,515 acres of farmland. Approximately 800 acres were leased to Larry Hebbert for 30 years. On November 12, 1998, Hebbert received a letter, prepared by Tamara's attorney and signed by both Clara and Tamara, informing him that his lease was being terminated. After the letter was sent, Clara, however, changed her mind and decided that she did not want to terminate Hebbert's lease. She told Tamara to reinstate the lease, but Tamara refused.

[¶ 4.] On December 16, 1998, Tamara executed two new leases. One lease was to Tamara's husband, Randy Luke, for 456 acres and the second lease was to Randy's cousin, John Cap (Cap), for 312 acres. Cap's father, Steve Cap, is Randy's uncle and employs Randy as a farm laborer.

[¶ 5.] Clara petitioned the trial court for an Order to Show Cause seeking to void the leases with Tamara's husband and Cap. The trial court found that the trust document contained "specific authorization in Article IX for the Trustee, Tamara K. Luke, to lease property either in her name or in her husband's name." It also found the "terms and conditions of the written lease agreements ... to be fair and reasonable." Based on those findings, the court concluded that "SDCL 55–2–3, SDCL 55–2–6, and SDCL 55–4–13 do not lead to a contrary conclusion."

[¶ 6.] Clara made a motion for reconsideration. The motion for reconsideration specifically set forth Clara's objections:

SDCL [s]ection 55–2–3 prohibits a trustee from taking part in any transaction concerning the trust in which he has an interest adverse to that of the beneficiary. SDCL [s]ection 55–4–13 also prohibits a trustee, unless expressly authorized by the trust instrument, from leasing any property from the trust or from or to a relative, employer or other business associate.

\* \* \* \* \* \*

This part of the trust document [Article IX] does not expressly authorize the [T]rustee to lease trust property to herself or a relative of hers. Although this paragraph does state the Trustee may operate directly[,][t]his provision simply allows the Trustee to operate the farm on behalf of the Trust and does not give permission for the Trustee to operate the farm for the Trustee's own profit.

This part of the trust document also authorizes the [T]rustee to lease trust property on a sharecrop basis. However, it does not expressly authorize the Trustee to lease to herself or her spouse such trust property.

The motion for reconsideration was denied. Clara appeals. We reverse and remand.

[¶ 7.] Because the facts are not in dispute, we determine the legal questions de novo. *Lustig v. Lustig*, 1997 SD 24, ¶ 5, 560 N.W.2d 239, 241. The issue is whether the findings support the conclusions of law. They do not because there is an error of law.

[¶ 8.] **WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE TRUST INSTRUMENT GRANTED TAMARA THE AUTHORITY TO LEASE TRUST PROPERTY TO HERSELF OR HER HUSBAND.**

[¶ 9.] "[A] trustee's first duty as a fiduciary is to act ... wholly for the

---

\* Initially, Elmer and his son-in-law, Gerard Hehn (Tamara's father) were co-trustees. Hehn resigned as trustee on October 13, 1992. Yankton attorney, Alice Rokahr, and Tamara were successor co-trustees. Rokahr later resigned. First Dakota National Bank of Yankton was then appointed to fulfill Rokahr's position. However, it also resigned leaving Tamara to serve as the sole trustee.

benefit of the trust." *Willers v. Wettestad,* 510 N.W.2d 676, 680 (S.D.1994) (citations omitted). Pursuant to SDCL 55–2–1, "a trustee is bound to act in the highest good faith toward h[er] beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." Nor may the trustee "use or deal with the trust property for h[er] own profit or for any other purpose unconnected with the trust." SDCL 55–2–2. Thus, "a fiduciary must act with utmost good faith and avoid any act of self-dealing that places h[er] personal interest in conflict with h[er] obligations to the beneficiaries." *American State Bank v. Adkins,* 458 N.W.2d 807, 811 (S.D.1990) (quoting *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 281 (1989)).

[¶ 10.] The Restatement of Trusts also addresses this duty of loyalty:

> The trustee violates the duty of loyalty not only when the trustee purchases trust property individually but also when the trustee uses trust property for the trustee's own financial or other purposes. Thus, *the trustee cannot properly* borrow money or *lease land held in the trust,* or invest trust funds in the trustee's own business.

Restatement (Third) of Trusts § 170 (1992), cmt. 1 (emphasis added).

[¶ 11.] Clearly, there is a general rule against self-dealing. However, our statutes set forth specific exceptions to this general rule. A trustee is allowed to participate "in any transaction concerning the trust in which [s]he . . . has an interest, present or contingent, adverse to that of h[er] beneficiary" if "the instrument creating the trust *expressly* grants permission to the trustee to buy, sell or lease property for the trust from or to the trust." SDCL 55–2–3(4) (emphasis added). SDCL 55–4–13 provides that: "a trustee may lease, purchase or sell property from or to the trust [s]he represents as trustee if *specifically* authorized to do so in a decedent's will or the instrument creating the trustee relationship . . . ." (emphasis added). Consequently, the question is whether the trust instrument "expressly" or "specifically" authorized Tamara to lease property to herself, her husband, or a relative.

[¶ 12.] Clara argues that the trust instrument does not authorize Tamara to lease land to herself or to her husband. She specifically points to SDCL 55–4–13 to support her argument that the lease to Tamara's husband constituted self-dealing and a breach of loyalty; therefore, she argues that the lease is presumptively invalid and void. She contends that the trust instrument merely allows the trustee to farm the property for the trust by performing the labor herself or by hiring employees or by renting the land to someone else to farm.

[¶ 13.] Tamara, on the other hand, argues that she had authority under SDCL 55–2–3(4) to lease the property because the trust instrument expressly allows her to do so.

[¶ 14.] In interpreting a trust instrument, we must first attempt to ascertain and give effect to the settlor's intention. Thus, we must interpret the instrument as written. "If that intention is clearly manifested by the language of the [trust instrument], it is the duty of this court to declare and enforce it." *Rowett v. McFarland,* 394 N.W.2d 298, 301 (S.D. 1986) (citing *Briggs v. Briggs,* 73 S.D. 500, 506, 45 N.W.2d 62, 65 (1950)). However, if the language is not clear, construction of an ambiguous trust instrument is a question of law to be decided by the court. *Johnson v. Johnson,* 291 N.W.2d 776, 778 (S.D.1980) (citations omitted). "In addition, an ambiguity is not of itself created simply because the parties differ as to the interpretation of the [trust instrument]." *Id.* at 778–79 (citations omitted).

**[¶ 15.]** In order for self-dealing activities to be authorized, the trust provision must provide "clear and unmistakable language" authorizing the trustee to lease to herself or to her husband. *In re Irrevocable Inter Vivos Trust, Etc.*, 305 N.W.2d 755, 760 (Minn.1981). In *In re Irrevocable Inter Vivos Trust, Etc.*, the Minnesota Supreme Court interpreted a trust provision that provided:

> Trustee is expressly authorized to invest all or part of the trust estate in shares of common stock of regulated investment companies known as 'The State Bond Group,' or in shares of common stock of State Bond and Mortgage Company, irrespective of the fact that the corporation issuing such securities is, or may be, 'affiliated persons' or 'affiliated persons of affiliated persons' and have interlocking directors and/or investment advisors....

*Id.* at 758. The court determined:

> [A] trustee may not put h[er]self in a position where h[er] self-interest may conflict with the beneficiaries' interest. But ... a settlor may waive the protection afforded by law against self-dealing if done in 'clear and unmistakable language.'

*Id.* at 760 (quoting *In re Anneke's Trust*, 229 Minn. 60, 38 N.W.2d 177, 183 (1949)). The court held that the above trust provision sanctioned the transactions and constituted "a waiver in clear and unmistakable language." *Id.*

**[¶ 16.]** In this case, Article IX of the Stevenson trust provides, in part:

> All of the powers granted to the Trustees in this Article, however, are subject to any express limitation or contrary directions contained elsewhere in this Trust. The powers set forth therein shall not be a limitation of but shall include the power to sell, lease, transfer, exchange or otherwise dispose of, or grant options with respect to, any and all property forming a part of the trust estate ... and may make and deliver such deeds, leases or other instruments as it considers proper under the circumstances, and may deal with the trust estate in any and all other ways in which any natural person could deal with h[er] own property.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> My Trustees may retain, acquire and continue any farm operation; engage in the production, harvesting and marketing of farm products either by operating directly or with management agencies, hired labor, tenants, or sharecroppers....

(emphasis added).

**[¶ 17.]** Although these provisions provide the trustee the *powers* to deal with the trust property as if it were her own, the powers must always be used *for the trust* and its beneficiaries, not for the trustee. That is the nature of a fiduciary relationship. The trustee can farm the property herself, or hire it done, but all transactions must be done for the trust, not for herself. Therefore, the grant of these powers does not authorize Tamara to engage in self-dealing by leasing the property to herself, her husband, or a relative. Clearly, it does not "expressly" or "specifically" authorize self-dealing as claimed. Despite the fact that the parties' interpretations differ, no ambiguity exists here. In other words, Article IX does not provide "clear and unmistakable language" authorizing the trustee to engage in self-dealing. Therefore, the leases to Tamara's husband and Cap are void.

**[¶ 18.]** Tamara also argues that Clara had the capacity to contract and had full knowledge of the facts when she authorized Tamara to lease the property to Tamara's husband. Therefore, she asserts that SDCL 55–2–3(1) allowed her to en-

gage in a transaction that may otherwise be considered self-dealing.

[¶ 19.] SDCL 55–2–3(1) provides, in part, that a trustee may participate in a transaction that is adverse to the beneficiary's interest when:

the beneficiary [has] the capacity to contract and, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect h[er] own decision and without the use of any influence on the part of the trustee, permits the trustee to do so. . . .

However, SDCL 55–2–8 provides that when a trustee obtains an advantage from the beneficiary, it is presumed that the beneficiary entered into the transaction "without sufficient consideration and under undue influence:"

All transactions between a trustee and h[er] beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which [s]he obtains any advantage from h[er] beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence.

Therefore, any claimed "consent" by Clara is presumed to be entered into without "sufficient consideration and under undue influence." Consequently, Tamara's argument fails.

[¶ 20.] We reverse the trial court's determination that Article IX "expressly" or "specifically" authorized Tamara to lease the trust property to herself, her husband, or a relative. We remand for proceedings consistent with this opinion.

[¶ 21.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.