#23525-r-JKM
**2006 SD 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF MARVIN M. SCHWAN
1992 GREAT, GREAT GRANDCHILDREN'S
TRUST

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *

HONORABLE JOSEPH NEILES
Judge

* * * *

MARK F. MARSHALL of
Davenport, Evans, Hurwitz &
  Smith, LLP
Sioux Falls, South Dakota

Attorneys for appellants Trustees
of Marvin M. Schwan 1992 Great,
Great Grandchildren's Trust.


ERIC J. MAGNUSON
LARRY R. HENNEMAN of
Rider, Bennett, LLP
Minneapolis, Minnesota

Attorneys for appellants Trustees
of Marvin M. Schwan 1992 Great,
Great Grandchildren's Trust.


THOMAS J. WELK
DARIN W. LARSON of
Boyce, Greenfield, Pashby & Welk
Sioux Falls, South Dakota

Attorneys for appellees, Guardian
Ad Litem Lorrie Schwan-Okerlund,
Mark D. Schwan, David J. Schwan,
and Paul M. Schwan.


ALLEN I. SAEKS
JANE F. GODFREY of
Leonard, Street & Deinard, P.A.
Minneapolis, Minnesota

Attorneys for appellees, Guardian
Ad Litem Lorrie Schwan-Okerlund,
Mark D. Schwan, David J. Schwan,
and Paul M. Schwan.

* * * *

ARGUED ON OCTOBER 5, 2005

OPINION FILED **01/25/06**

#23525

MEIERHENRY, Justice

[¶1.]    Trustees of the Schwan Great, Great Grandchildren's Trust (3G Trust) appeal from an order regarding accounting and trustee's fees wherein the circuit court disapproved of trustee fees paid to the trustee Lawrence Burgdorf. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

*Estate Plan of Marvin M. Schwan*

[¶2.]    Marvin M. Schwan (Schwan) was the founder and chief executive officer of Schwan Food Company (Schwan Food), formerly known as Schwan's Sales Enterprises, Inc., a large frozen food company based in Marshall, Minnesota. Before his death, Schwan established a comprehensive estate plan which included a will, a revocable trust, and various other trusts. Part of Schwan's estate plan was to transfer his Schwan Food shares to entities created by the estate plan. Thus, upon Schwan's death, all of his Schwan Food voting and nonvoting stock was transferred from the revocable trust, which then held the stock, to the Schwan Foundation Trust (Foundation), a charitable trust. His estate plan also provided for Schwan Food to redeem the stock from the Foundation. A majority of the voting stock eventually was transferred to the 3G Trust, which was created for the benefit of Schwan's unborn great, great grandchildren and descendents. This appeal involves the 3G Trust and the Foundation.

[¶3.]    Schwan named himself, his brother Alfred Schwan (Alfred), and Schwan's long-time friend and associate Lawrence Burgdorf (Burgdorf) as co-trustees of the 3G Trust and the Foundation. Alfred and Burgdorf had worked with

-1-

Schwan for many years in the management of Schwan Food. Alfred served as chief executive officer and chairman of the board, and Burgdorf served as director of corporate contributions. The three men served as co-trustees of the Foundation and 3G trusts until Schwan's death. After Schwan's death, Alfred and Burgdorf continued to serve as trustees.

[¶4.] Under the terms of the 3G Trust, a separate succession committee selects successor trustees and sets annual trustee fees. The original members of the succession committee were Schwan, Alfred, Burgdorf, and a fourth individual. Only Alfred and Burgdorf remain from the original committee. Three new members have been added. The committee sets trustee fees based on the guidelines in the 3G Trust document. The guidelines require that the annual trustee fees be "not less than One Hundred Thousand Dollars ($100,000) and not more than Two Hundred Thousand Dollars ($200,000)." The trustee fees are offset: (1) by compensation earned as a trustee from other Schwan trusts; or (2) by compensation earned as an employee of Schwan Food or an "affiliated organization." Whether the Foundation is considered an "affiliated organization" of Schwan Food forms the basis of this dispute.

[¶5.] The Foundation was created as a charitable trust under section 501(c)(3) of the Internal Revenue Code of 1986. The Foundation instrument originally appointed Schwan, Alfred, and Burgdorf as trustees. When this dispute arose, Alfred and Burgdorf served as its sole trustees.[1] Like the 3G Trust, the

---

1.    A third trustee was not appointed after Marvin's death. Under the trust instrument, the Foundation may operate with only two trustees.

Foundation instrument also established a trust succession committee responsible for setting fees and appointing successor trustees of the trust. The Foundation instrument, however, merely provided that the trustees receive "reasonable compensation" without an offset provision.

*Events Following Schwan's Death*

[¶6.] Schwan died on May 9, 1993. As directed by his estate plan, the trustees of his revocable trust transferred all of Schwan's voting and nonvoting stock in Schwan Food to the Foundation. Thus, after Schwan's death, the Foundation owned a majority of the voting and nonvoting stock of Schwan Food. Pursuant to Schwan's estate plan directive, Schwan Food subsequently redeemed all of the stock held by the Foundation. This transaction effectively stripped the Foundation of any ownership interest in Schwan Food[2] and fully funded the Foundation. At the time that this action arose, the Foundation had assets of approximately one billion dollars.

[¶7.] In 1996, Burgdorf resigned from his position as Schwan Food's director of corporate contributions. He then became the executive director of the Foundation.[3] In addition, he continued to serve as a trustee for both the Foundation and the 3G Trust. The Foundation paid Burgdorf an annual director's

---

2. The 3G Trust now owns a majority of the voting stock in Schwan Food and as of December 31, 2003, the assets of 3G Trust were valued at $54 million. The Grandchildren's Trust, another of the trusts Schwan established, owns about 99% of the nonvoting stock in Schwan Food.

3. The propriety of Burgdorf serving in that capacity is not at issue in this appeal.

salary of $150,000.  The 3G Trust paid him annual trustee fees of $150,000.[4]  The propriety of Burgdorf receiving trustee fees from 3G Trust in addition to his Foundation director's salary first arose in 2003.  Burgdorf and Alfred, as trustees of the 3G Trust, addressed the issue of whether the 3G Trust provision required an offset.[5]  They concluded that the offset provision did not apply because the Foundation and Schwan Food were not "affiliated organizations."

[¶8.]         In early 2004, the 3G trustees sought court supervision of the 3G Trust.  The trustees asked the court to appoint Schwan's children[6] to serve as guardians ad litem for the 3G Trust beneficiaries, Schwan's yet unborn great, great grandchildren and future descendents.  The circuit court ordered supervision and appointed Schwan's children as guardians ad litem (guardians).

[¶9.]         In June 2004, the 3G trustees petitioned for court approval of the payment of trustee fees.  The guardians objected to Burgdorf's trustee fees.[7]  They

---

4.     Burgdorf received the trustee fees for 2003 and the first two quarters of 2004.

5.     In January 2003, a third trustee was appointed for the 3G Trust.  While it is disputed whether the decision regarding the offset was made before or after the appointment of the third trustee, it is undisputed that the third trustee did not take part in the decision.

6.     Marvin's four children are Lorrie Schwan-Okerlund, Mark Schwan, David Schwan, and Paul A. Schwan.

7.     In their brief, the guardians argue that Burgdorf "was in a conflict of interest position" and that "[p]ursuant to his duty of loyalty to the beneficiaries, Burgdorf should not have even participated" in the decision concerning the offset.  The trial court made no findings in that regard nor did the guardians file a notice of review.  Consequently, this argument is not properly before the Court.

claimed that the offset provision of the 3G Trust required the reduction of Burgdorf's trustee fees by the amount of Burgdorf's Foundation director's salary.

[¶10.]    The circuit court ruled that the trustees of the 3G Trust did not have absolute power to interpret the trust's terms and that the court had the power to review the trustees' interpretation. The circuit court then determined that the Foundation and Schwan Food were "affiliated organizations" for the purposes of the 3G Trust's offset provision. Consequently, the court ordered the reduction of fees received by Burgdorf as trustee of the 3G Trust by the amount of his salary as executive director of the Foundation. Burgdorf and Alfred, as trustees of the 3G Trust, now appeal.

## ISSUE

Whether the circuit court erred by interpreting the trust provision to require an offset of Burgdorf's salary as executive director of the Foundation against his trustee fee from the 3G Trust.

## STANDARD OF REVIEW

[¶11.]    The interpretation of the terms of a trust is a question of law and is reviewed *de novo*. *See In re* Estate of Stevenson, 2000 SD 24, ¶¶7, 14, 605 NW2d 818, 820-21; *cf. In re* Estate of Klauzer, 2000 SD 7, ¶10, 604 NW2d 474, 477 (providing that a trial court's interpretation of a will is reviewed *de novo*).

## DECISION

[¶12.]    The duty of the court is to carry out the wishes of the trust creator. *Estate of Stevenson*, 2000 SD 24, ¶14, 605 NW2d at 821. In order to do so, we look to the language of the trust instrument. *Id.* "In interpreting a trust instrument, we must first attempt to ascertain and give effect to the settlor's intention. Thus, we

must interpret the instrument as written." *Id.* In the 3G Trust instrument,

Schwan specifically designates the amount and manner of determining trustee fees

for the 3G Trust. The 3G Trust provides:

> Trustees' Fees; Committee Fees. Each Trustee shall receive an annual fee (in addition to reimbursement of reasonable expenses), payable in quarterly installments, determined by the Trustee Succession Committee in an amount not less than One Hundred Thousand Dollars ($100,000) and not more than Two Hundred Thousand Dollars ($200,000), which limits shall be increased annually on the anniversary of the signing of this instrument by the percentage, if any, by which the United States Department of Labor Consumer Price Index for All Urban Consumers for the district which includes Marshall, Minnesota, shall have increased prior to said anniversary. ***Said fee shall be offset by any Trustee's fees earned during the year by a Trustee as Trustee of another trust created by the Grantor, and shall be offset by the aggregate amount of the salaries and other cash compensation, if any, received during the year by a Trustee from Schwan's Sales Enterprises, Inc., or an affiliated organization*** or from any one or more organizations whose stock or other securities are held in trust hereunder other than an organization less than 2% of any class of whose stock or other securities of any class is held in trust hereunder.

(emphasis added).[8] This trust provision clearly requires that each trustee "receive

an annual fee (in addition to reimbursement of reasonable expenses)." The annual

amount is set by the 3G Trust Succession Committee "in an amount not less than

One Hundred Thousand Dollars ($100,000) and not more than Two Hundred

Thousand Dollars ($200,000)." The language of the 3G Trust specifically requires

that the annual fee "be offset by any Trustee's fees earned during the year as a

Trustee of another trust created by [Schwan]." The language further requires an

offset by salaries from affiliated organizations.

---

8.     Schwan's Sales Enterprises, Inc. is now known as Schwan Food Company.

[¶13.]     This dispute involves the meaning of the term "affiliated organization." The language in question specifies that trustee fees from the 3G Trust are offset as follows:

> Said fee . . . shall be offset by the aggregate amount of the salaries and other cash compensation, if any, received during the year by a Trustee from Schwan's Sales Enterprises, Inc., or an affiliated organization . . . .

In other words, the question is which organizations did Schwan regard as affiliated with Schwan Food. To answer the question, we must first look at the words he chose to use in expressing his intention and in the words he did not choose.

[¶14.]     The trial court equated the phrase "affiliated organization" with the term "affiliate" found in the Uniform Trusts Act and relied on the legislative definition of "affiliate" found in SDCL 55-4-1(1). The problem with equating these two terms, as the guardians point out in their brief, is that the plain meaning of the term "affiliated organization" is different from the term "affiliate." In the 3G Trust document, Schwan included the term "affiliate" in the overall definition of "Schwan's Sales Enterprises, Inc." (Schwan Food). In the 3G Trust, Schwan directed that "[a]ny reference to 'Schwan's Sales Enterprises, Inc.' in this document shall be deemed to refer to said corporation . . . and to any *affiliate* of said corporation." (emphasis added). The trust provides:

> <u>Provisions Relating to Schwan's Sales Enterprises, Inc.</u> The Grantor expects to transfer to the Trustees certain voting securities of Schwan's Sales Enterprises, Inc., and expects that such securities will be the sole or principal holding of the Trustees. Any reference to "Schwan's Sales Enterprises, Inc." in this document shall be deemed to refer to said corporation, to the proceeds of any reorganization, merger, division or similar transaction affecting its identity or capitalization, *and to any affiliate of said corporation* (including, without limitation, any

> member of a controlled group as defined in section 1563 of the Code in which said corporation is included). A principal purpose of the Grantor in establishing this trust is to provide for the continuation and prosperity of Schwan's Sales Enterprises, Inc., under centralized management. . . .

(emphasis added). Since any "affiliate" is already included in any reference to Schwan Sales Enterprises, Inc., the offset "from Schwan's Sales Enterprises, Inc." already includes an offset from its affiliates. Thus, the additional phrase requiring an offset from "*an affiliated organization*" suggests something in addition to and different from the term "affiliate."

[¶15.]       One of the principles of interpretation requires us to attempt, as much as possible, to give meaning to all the words and provisions in the trust. *See Estate of Klauzer*, 2000 SD 7, ¶10, 604 NW2d at 477; In re Bock's Estate, 85 SD 113, 115, 177 NW2d 734, 735. In applying this principle when interpreting a will, we stated, "[i]n ascertaining a testator's intent all the words and provisions appearing in his will must be given effect as far as possible, and none should be cast aside as meaningless. To hold otherwise would be to convict a testator of performing useless acts." *Bock's Estate*, 85 SD at 115, 177 NW2d at 735 (citation omitted). This same principle applies to ascertaining a settlor's intent in a trust document. When interpreting provisions of a trust, ordinary words are given their usual and ordinary meaning. *See* Rowett v. McFarland, 394 NW2d 298, 301 (SD 1986).

[¶16.]       Consequently, we look to the usual and ordinary meaning of the words Schwan used. Schwan does not use the noun "affiliate" in the offset provision. The noun he uses is "organization." Salaries from organizations either "affiliated" with Schwan Foods or whose stock or securities are held by the 3G Trust are required to

be offset. The focus is on the word "organization." To substitute the term "affiliate" for the term "an affiliated organization" would render the word "organization" redundant and meaningless. Thus, to give effect to the term "an affiliated organization," we assume that Schwan must have intended an entity other than an "affiliate" of Schwan Food as defined elsewhere in the trust.

[¶17.]    "Organization" is defined as "something organized" or "a group of people that has a more or less constant membership, a body of officers, a purpose, and usually a set of regulations." Webster's Third New International Dictionary 1590 (1986). The modifying word "affiliated," means "attach[ed] as a member or branch" or positioned or associated "in close connection." *Id*. at 35. It therefore follows from these definitions that the common and ordinary meaning of the phrase "affiliated organization," in the context of the 3G Trust, means an organization closely associated with Schwan Food.

[¶18.]    Historically, the Foundation was closely associated with Schwan Food. There were times in the administration of the Schwan trusts and estate plans when the Foundation would have been considered an affiliated organization of Schwan Food. At one point, all of Schwan's voting and nonvoting stock in Schwan Food was held by the Foundation. Thus, at Schwan's death, the Foundation controlled a majority of the voting and nonvoting stock of Schwan Food. At that time, it would have met the broad category of "an affiliated organization." The affiliation, however, changed, after Schwan's death. Schwan's estate plan directed that Schwan Food was to redeem all of the stock held by the Foundation. Upon redemption of the stock, the affiliation of the two organizations was severed. The

infusion of cash resulting from the redemption funded the Foundation. The control of the stock shifted to Schwan Food and subsequently, in part, to the 3G Trust. At the time Burgdorf assumed the Foundation director position, the Foundation was no longer affiliated with Schwan Food, nor is it today. Therefore, under the plain meaning of the 3G Trust's terms and based upon the facts, we conclude that the Foundation is not an affiliated organization of Schwan Food.

[¶19.] The trial court's only basis for finding an affiliation is the indirect connection between Schwan Food and the Foundation through the people who currently serve as the trustees of the 3G Trust. The trial court reasoned as follows: the 3G Trust controls Schwan Food; Burgdorf and Alfred are trustees of the 3G Trust; Burgdorf and Alfred are also trustees of the Foundation; therefore, Burgdorf and Alfred control both Schwan Food and the Foundation, making the Foundation an "affiliate" of Schwan Food. The trial court arrived at his conclusion by finding the phrase, "an affiliated organization" ambiguous and turning to statutory definitions of "affiliate" and "person."9

---

9. The trial court applied statutory definitions in SDCL 55-4-1(1) and (2) to arrive at the following analysis:

> The Foundation is controlled by the Trustees of the Foundation, i.e., Burgdorf and Alfred. [Schwan Food] is controlled by the Board of Directors, who answer to the stockholders. Alfred is Chairman of the Board of Directors of [Schwan Food], and the 3G Trust owns over 50% of the voting stock of [Schwan Food], giving the trustees of the 3G Trust control over [Schwan Food], and control over the Board of Directors of the company. Alfred and Burgdorf are two of the three trustees of the 3G Trust. Therefore, Alfred and Burgdorf collectively have control of [Schwan Food]. Alfred and Burgdorf, as sole trustees of the Foundation, and as the majority of the trustees in control of the 3G Trust, control both the Foundation and [Schwan Food]. Under South

(continued . . .)

[¶20.] The trial court's finding of affiliation based solely on the individual identities of the trustees is in error. South Dakota trust law specifically states that "[u]nless it is otherwise provided by the trust instrument, or an amendment thereof, or by court order, all powers of a trustee shall be attached to the office and shall not be personal." SDCL 55-4-2. Therefore, for both the 3G Trust and the Foundation, the powers of the trustee attach to the *office*, not to the individual holding the office. The trustee's power exists independent and regardless of the individual in the position. The 3G and Foundation trusts have separate and independent boards of trustees. Each board of trustees has a separate trustee succession committee. In both trusts, the established succession committee has the power to appoint individuals as trustees. Although Alfred and Burgdorf currently serve as trustees for both trusts, clearly the terms of the trust do not require or even contemplate such overlap in the future. Thus, under the facts of this case, the identities of individuals acting as trustees cannot be used to connect the Foundation and Schwan Food in order to make them "affiliated organizations."

[¶21.] Even if the term "affiliated organizations" is considered ambiguous, as the trial court determined, we cannot say that the interpretation and application by the trustees was unreasonable or in bad faith. Ambiguity requires the court first to look at the other provisions of a trust to determine the testator's intent. In doing so,

_____

(. . . continued)

Dakota law, the Foundation and [Schwan Food] are therefore under common control and are affiliated organizations.

it is apparent that Schwan intended to give the trustees broad discretion in their interpretation of ambiguities. He directed in the 3G Trust as follows:

> All powers and discretion given to the Trustees shall be exercisable in their sole discretion, and all their decisions and determinations (including determinations of the meaning and reference of any ambiguous expression used in this instrument or the identification of any beneficiary) made in good faith and in the exercise of a reasonable judgment shall be conclusive upon all persons . . . .

Under South Dakota law, "discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion but may be controlled by the circuit court, if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust."[10]  SDCL 55-3-9.

[¶22.]    In this case, the trust provision gives the trustees "sole discretion" to exercise their powers and discretion within the bounds of good faith and reasonable judgment. This discretion includes decisions concerning the meaning of any "ambiguous expression" of the trust instrument. Although the guardians may not agree with the determination of the trustees, we cannot say the trustees' determination was unreasonable.

[¶23.]    We reverse.

[¶24.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

10.    Regardless of whether a trustee receives any compensation, the trustee must also "use at least ordinary care and diligence in the execution of his trust." SDCL 55-3-10.