#28357-a-GAS
**2018 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE HEUPEL FAMILY
REVOCABLE TRUST dated March 23, 1999.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Retired Judge

* * * *

DAVID L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota

Attorneys for appellants Chad
Heupel and Heupel Family
Revocable Trust.

GREGORY A. EIESLAND of
Johnson Eiesland Law Offices
Rapid City, South Dakota

Attorneys for appellee Renee L.
Hansen.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 16, 2018
OPINION FILED **06/20/18**

#28357

SEVERSON, Retired Justice

[¶1.] The beneficiary of a trust filed a motion for an order to show cause for why the trustee failed to follow an order of the circuit court. The beneficiary also petitioned the circuit court to order the return of funds to the trust, which funds were allegedly misappropriated by the trustee as a result of the trustee's breaches of his fiduciary duties. The beneficiary further sought to recover attorney fees from the trustee. After multiple hearings, the circuit court held the trustee in contempt, found that the trustee had breached his fiduciary duties to the beneficiary, and found that the trustee had misappropriated trust funds. The court ordered the trustee to personally reimburse the trust for the misappropriated funds. The court also ordered the trustee to personally pay the beneficiary attorney fees. The trustee appeals. We affirm.

## Background

[¶2.] On September 22, 2012, Cordavee Heupel died. Her five adult children survived her: Colin Heupel, Chad Heupel, Renee Hansen, Casey Heupel, and RaeDeen Heupel. On the date of Cordavee's death, the terms of the Heupel Family Revocable Trust dated March 23, 1999, activated. The Family Trust created a springing trust—the Renee Hansen Share Trust. The Family Trust also created the RaeDeen Rose Heupel Share Trust. Colin and BankWest were the co-trustees of all three trusts. Colin resigned as a co-trustee and appointed Chad in his place.

[¶3.] The Family Trust corpus included, among other things, 160 acres of land in Meade County, South Dakota. The siblings disputed the distribution of the land. BankWest petitioned the circuit court for judicial supervision of the Family

Trust and for distribution of trust property. No party opposed judicial supervision. Chad and Casey were jointly represented by Bangs, McCullen, Butler, Foye & Simmons; BankWest was represented by Costello, Porter, Hill, Heisterkamp, Bushnill & Carpenter; Colin was represented by Gunderson, Palmer, Nelson, & Ashmore; Renee was represented by Johnson Eiesland Law Offices; and Estes Campbell Law Firm represented RaeDeen's guardian.

[¶4.]        BankWest's petition for distribution of trust property proposed that the Meade County property be sold at public auction. Chad and Casey, as beneficiaries, filed an objection to the sale of the property at a public auction. Colin also objected and submitted an offer to purchase the property. Renee filed a response, requesting that the circuit court utilize a sealed-bid process allowing bids between the family members. Colin filed an alternative response, seeking partition of the property. He also requested that a referee be appointed to determine whether the property could be partitioned. Chad and Casey joined Colin's alternative request and indicated support for Colin's offer to purchase the property.

[¶5.]        On September 10, 2013, the circuit court entered an order assuming supervision of the Family Trust. It approved BankWest's inventory of the Family Trust, approved the distribution of personal and other property, directed that certain personal property be sold at public auction, permitted the amendment of the special needs trust created for RaeDeen, and found the fair market value of the Meade County property to be $450,000. The court also identified that all parties agreed that the Meade County property should be sold by private sale or to a trust beneficiary subject to court approval.

[¶6.] In a separate order, the circuit court directed the appointment of a referee to determine if the Meade County property could be partitioned. The parties could not agree on the appointment of a referee, so the court appointed three referees. The referees submitted a report to the court indicating that the property could be partitioned. Renee objected to the referees' report and advocated for a public sale of the property. Colin petitioned for the court to approve the referees' recommendations. Chad and Casey joined Colin's petition.

[¶7.] A trial commenced on April 1, 2015. That same day, however, the siblings settled the dispute over the Meade County property. They agreed that Colin and his wife would purchase the property from the Family Trust, and Renee would receive—in her Share Trust—her 1/5 interest of the value set by the court-appointed appraisers. The circuit court approved the parties' written stipulation on April 30, 2015.

[¶8.] On September 15, 2015, BankWest filed a "Verified Petition for Approval of Final Accounting, Discharge of Co-Trustees, Termination of Court Supervision of Trust and Resignation of Co-Trustee BankWest as Trustee of the RaeDeen Heupel Special Needs Trust and Renee L. Hansen Share Trust." Chad and Casey "as beneficiaries of the Heupel Family Revocable Trust" objected to the fee claimed by BankWest. RaeDeen, now represented by Chad and Casey's counsel, also objected. They argued that BankWest had contractually agreed to accept a 1% fee rather than the 2.5% fee BankWest claimed. Colin filed a separate response, also objecting to BankWest's fee request. Chad, Casey, and RaeDeen joined Colin's response. Renee took a position adverse to her siblings.

[¶9.] After a hearing on BankWest's petition, the court set the fee dispute for trial. It, however, indicated that it would dismiss BankWest as a co-trustee on Renee's Share Trust. The court specifically noted that BankWest remained a co-trustee on the RaeDeen Heupel Special Needs Trust and the Family Trust. On November 2, 2015, the circuit court entered an order dismissing BankWest "as a Trustee of the Renee L. Hansen Share Trust upon entrance of this Order." The order further provided: "Chad Heupel shall, as Co-Trustee of the Renee L. Hansen Share Trust shall [sic] nominate a new independent financial institution to act as a successor Co-Trustee of BankWest, Inc., which nominee shall be approved by the [c]ourt[.]" The order gave notice of an evidentiary hearing on the remaining relief requested, namely BankWest's trustee fees "for service as sole trustee in accordance with the terms of the Heupel Family Revocable Trust."

[¶10.] Prior to the evidentiary hearing on BankWest's fees, the parties settled their dispute. BankWest agreed to be paid 1% of the total market value of all assets in the Family Trust rather than its requested 2.5%. BankWest also agreed to reimburse the Family Trust the fees paid out of the Family Trust, which were incurred by BankWest as a result of the BankWest fee dispute. On January 7, 2016, the circuit court entered an order accepting the terms of the parties' settlement. The order provided that as of the date of the order, the court accepted BankWest's resignation as a trustee of the RaeDeen Special Needs Trust and the Family Trust. The court ordered that "supervision of the Heupel Family Revocable Trust shall terminate effective immediately."

[¶11.]     On January 25, 2016, BankWest made final distributions of the remaining funds held in the Family Trust. All five beneficiaries received equal cash disbursements, with RaeDeen's and Renee's respective shares being placed in their respective trusts. In February 2016, Renee received a $1,500 check from Family Heritage Trust Company as her monthly disbursement from her trust. Family Heritage had been selected by Chad to act as co-trustee of Renee's Share Trust. Renee did not cash the check because Chad did not obtain the circuit court's approval prior to appointing Family Heritage as co-trustee of her Share Trust.

[¶12.]     In March 2016, Renee filed a motion for an order to show cause why Chad "should not be held in contempt of court for his failure to comply with" the circuit court's order requiring that Chad obtain the circuit court's approval of the appointment of a co-trustee of her trust. Renee's motion further requested that the court order Chad to account for misappropriated funds from Renee's trust and that Chad be required to pay Renee's costs and attorney fees. The court entered an order to show cause. Prior to the hearing on the court's order, Renee's counsel sent a letter to Chad's counsel, requesting that Chad not distribute further funds from Renee's Share Trust except the monthly payments to Renee.

[¶13.]     On May 17, 2016, the court held a hearing on the order to show cause. The court indicated that it would not address Renee's claim that Chad misappropriated funds during the order to show cause hearing. In regard to Renee's claim that Chad disregarded the court's November 2015 order, Chad replied that he did not need to seek judicial approval for exercising his powers as a trustee of Renee's Share Trust because the court had terminated judicial supervision of the

Family Trust. The court disagreed, concluding that its November 2015 order unambiguously required that Chad obtain court approval of the appointment of a corporate co-trustee.

[¶14.] The court held that Chad violated the court's order when he failed to obtain court approval. The court declared that the appointment of the corporate trustee "is a nullity because the [c]ourt order was not followed." The court did not direct a specific transition from Family Heritage; instead, it said, "Now you guys figure out what happens with that."

[¶15.] In June 2016, the circuit court entered an order on the motion to show cause. It held that Chad had violated the November 2015 order when he appointed Family Heritage Trust Company as the co-trustee. The court further held that Family Heritage "is not the Co-Trustee of the Renee L. Hansen Share Trust, and never was the Co-Trustee appointed by this [c]ourt." The court ordered Chad to pay Renee's attorney fees incurred in pursuing the order to show cause. We note that Chad did not appeal this order. The court set an evidentiary hearing to approve a co-trustee for Renee's Share Trust and to consider Renee's claim that Chad misappropriated trust funds and breached his fiduciary duty to Renee.

[¶16.] Prior to the evidentiary hearing, both parties submitted petitions. Renee asserted that Chad breached his fiduciary duty to preserve Renee's trust assets and act in the best interest of Renee. She further claimed that Chad willfully and without authority used his position as trustee for his own profit and for purposes unconnected to the trust.

[¶17.]     In response, Chad asserted that the circuit court lacked subject matter jurisdiction to take action in regard to Renee's Share Trust because the circuit court's order terminating judicial supervision of the Heupel Family Trust also ended supervision of Renee's trust. Chad further claimed that the court was without jurisdiction because it had not yet entered an order for judicial supervision of Renee's Share Trust. Chad alternatively argued that if the court had jurisdiction, it erred when it found that he breached his fiduciary duties as a trustee because the Share Trust afforded him substantial discretion to pay his fees and to pay counsel.

[¶18.]     On July 8, 2016, the court held a hearing, and at the conclusion of the hearing, the court issued an oral ruling. It restated that its November 2015 order requiring Chad to obtain approval of the appointment of a corporate trustee "survived the order terminating [c]ourt supervision." It also found that Chad was not acting under his authority granted in Renee's Share Trust when he challenged the BankWest fee. The court then ordered judicial supervision of the trust. The court granted Renee's request to remove Chad as a trustee and to dismiss Family Heritage. The court requested a complete accounting from counsel for Chad and from Family Heritage.

[¶19.]     On July 15, the court entered a written order memorializing its oral rulings from the July 8 hearing. The order indicated that Renee's request for attorney fees was held in abeyance, as was the court's ruling on the amount Chad would be required to personally reimburse Renee's Share Trust. The parties submitted briefing on the issues reserved by the court.

[¶20.] In April 2017, the circuit court issued a memorandum decision. The court again stated its previous holding that the termination of judicial supervision of the Family Trust did not vacate the court's November 2015 orders. The court remarked, "Enforcement of the [c]ourt's orders survives the termination of supervision of the Master Trust, and under these circumstances, any ostensible termination of the supervision of Renee's Trust." The court found, based on its consideration of the evidence and testimony of the parties, that "[e]very act, every distribution made by the ostensible co-Trustee Family Heritage Trust Company or Chad Heupel was ultra-vires." Further, the court found that Chad's "[a]fter the fact jiggering of Renee's share of the Master Trust and unilateral payment of other parties' fees and expenses" was surreptitious and fraudulent. The court found compelling that "at no point from July 30, 2013 to date [did] Chad ever represent[] to this [c]ourt that he was acting in his capacity as co-Trustee of the Master Trust. And it was only after Renee commenced the instant litigation that Chad appeared or represented that he was acting as co-Trustee of Renee's Trust." The court, therefore, held that "Chad Heupel has committed a substantial breach of his Trust, both as co-Trustee of the Master Trust and as Trustee of Renee's Trust." The court further held that Chad improperly caused the payment of attorney fees to attorneys not representing Renee or the Share Trust. Ultimately, the court held that distributions totaling $27,168.31 were "all ultra-vires, all without notice or [c]ourt approval[.]"

[¶21.] Citing SDCL 20-10-2, the court held Chad personally liable for his tortious conduct. The court also found Chad in contempt for his failure to comply

with the court's orders. The court noted that Chad claimed he did not violate the orders on purpose. But in the court's view, "[t]he testimony is self-serving." The court emphasized that Chad continued to distribute funds from Renee's Share Trust after the hearing on Renee's motion for an order to show cause. Although the court did not find Chad in contempt in its June 17, 2016 order, it determined that "Chad's unilateral disbursements mere days before the July 8, 2016 hearing changed the calculus."

[¶22.] On the issue of Renee's request that Chad pay her attorney fees, the court ordered that Chad reimburse Renee the attorney fees and costs incurred in the current litigation as a sanction for his contempt. After examining the reasonableness of the fee request and the factors relevant to an award of fees in a civil case, the court ordered that Chad repay Renee her reasonable attorney fees and costs. Finally, the court ordered that Chad in his individual capacity reimburse the Renee L. Hansen Share Trust $27,168.31.

[¶23.] In conclusion the court wrote,

> Chad Heupel willfully and contumaciously violated a valid [c]ourt order. Chad had the ability to abide by the order. Chad's violation of the [c]ourt order was contemptuous. Chad breached his fiduciary duties. Chad had an irreconcilable conflict with Renee throughout the course of these proceedings. Chad's actions were ultra-vires. Chad did not prevail. Chad committed fraud.

The court ordered the removal of Chad as the co-trustee of Renee's Share Trust and directed that the parties may submit proposed findings of fact and conclusions of law. After the parties submitted proposed findings and conclusions, the court adopted and amended Renee's proposed findings and conclusions. On June 1, 2017,

the court entered findings, conclusions, and an order, which incorporated its memorandum decision.

[¶24.]     Represented by new counsel, Chad appeals.  We restate his issues as follows:

> 1.  Whether the circuit court had subject matter jurisdiction.
>
> 2.  Whether the circuit court erred when it held that Chad breached his fiduciary duties.
>
> 3.  Whether the court abused its discretion when it removed Chad as a trustee.
>
> 4.  Whether the court erred when it held Chad personally liable for disbursements made from Renee's Share Trust and for the payment of Renee's attorney fees.

## Analysis

### 1. Subject Matter Jurisdiction

[¶25.]     Chad argues that the circuit court lacked subject matter jurisdiction to act in regard to Renee's Share Trust after the court entered its order terminating judicial supervision of the Family Trust.  Subject matter jurisdiction is a "a court's competence to hear and determine cases of the general class to which proceedings in question belong; the power to deal with the general subject involved in the action;" and "deals with the court's competence to hear a particular category of cases." *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 14, 729 N.W.2d 335, 342 (quoting *State ex rel. Joseph v. Redwing*, 429 N.W.2d 49, 51 (S.D. 1988)).  South Dakota courts are courts of general jurisdiction.  Therefore, a circuit court has "general jurisdiction to hear all civil actions." *Christians v. Christians*, 2001 S.D.

142, ¶ 45, 637 N.W.2d 377, 386 (Konenkamp, J., concurring specially) (citing S.D. Const. art. V. § 1).

[¶26.] Chad does not claim that the circuit court lacked subject matter jurisdiction to enter its November 2015 order mandating that Chad obtain court approval prior to the appointment of a corporate co-trustee for Renee's Share Trust. Nor does Chad assert that a circuit court was without authority to enforce its orders. Thus, this issue does not concern whether the circuit court had *subject matter jurisdiction*. Rather, we must determine whether the orders entered subsequent to November 2, 2015, negated the circuit court's order that Chad seek court approval of the appointment of a co-trustee.

[¶27.] From our review of the various orders, no order issued after November 2, 2015, and the transcripts relevant to the orders had the effect of superseding the circuit court's November 2015 order. Indeed, at a hearing in December 2015, counsel for Chad asked the court questions regarding the effect of the court's decision to terminate supervision of the Family Trust on Renee's Share Trust. The court remarked that it would leave the appointment of a successor trustee for Renee's Share Trust "to you folks." But the court reiterated, "Whatever that is, it's to be approved by the [c]ourt." Because the court's November 2015 order remained in effect and enforceable, the circuit court had authority to enforce its order in response to Renee's filing of a motion for an order to show cause.

### 2. Breach of Fiduciary Duties

[¶28.] Chad next claims that the circuit court erred when it held that he breached his fiduciary duties as a trustee. Chad relies on the fact that judicial

supervision of the trust had terminated. He claims that, consequently, he was entitled to resume his broad powers and duties as a trustee of Renee's Share Trust. He further claims that as of January 25, 2016—the date BankWest completed its final distribution—Chad's role as a beneficiary of the Family Trust ceased to exist and his "sole involvement" was in the role of trustee of the Renee L. Hansen Share Trust. He avers "[h]e had no interest adversary to Renee." Rather, according to Chad, any conflict that existed between he and Renee existed solely because of Renee's objections and actions. He further claims that the court failed to identify any trust provision Chad violated.

[¶29.] As we recently stated in *In re Estate of Moncur*,

> As a fiduciary, a trustee has a duty "to act in all things wholly for the benefit of the trust." *Willers v. Wettestad,* 510 N.W.2d 676, 680 (S.D. 1994) (citing *Schroeder v. Herbert C. Coe Trust,* 437 N.W.2d 178 (S.D. 1989); Restatement (Second) of Trusts §§ 175, 176 (1959)). SDCL 55-2-1 provides that "[i]n all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." In addition, we have declared that "a fiduciary must act with utmost good faith and avoid any act of self-dealing that places his personal interest in conflict with his obligations to the beneficiaries." *In re Estate of Stevenson,* 2000 S.D. 24, ¶ 9, 605 N.W.2d 818, 821 (quoting *American State Bank v. Adkins,* 458 N.W.2d 807, 811 (S.D. 1990)).

2012 S.D. 17, ¶ 9, 812 N.W.2d 485, 487. "Whether a trustee has breached a fiduciary duty is a question of fact." *Id.* ¶ 10. We will not set aside the circuit court's factual findings unless they are clearly erroneous. *Id.*

[¶30.] Although Chad avers on appeal that as of January 25, 2016, he was acting solely in the capacity as trustee for the Share Trust, the record supports the

court's conclusion to the contrary. The court found that at all times pre- and post-January 25, 2016, Chad's position was adverse to Renee's. Further, Chad's counsel appeared on behalf of Chad in Chad's capacity as a beneficiary. Moreover, the court found and the record supports that Chad's decision to distribute funds from Renee's trust benefited Chad personally. Because Chad has not shown that the circuit court's findings are clearly erroneous, the circuit court did not err when it concluded that Chad breached his fiduciary duty as trustee of the Renee L. Hansen Share Trust.

### 3. Removal of Chad as Trustee

[¶31.] Chad argues that the circuit court abused its discretion when it removed him as trustee of Renee's Share Trust. We review a court's decision to remove a trustee for an abuse of discretion. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850 (quoting *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910).

[¶32.] Chad makes one statement in support of his claim that the court abused its discretion. He claims that he should not have been removed because he "sought to fulfill the purposes of the Family Trust and follow the instructions of the settlors." The rest of Chad's argument on this issue assumes the circuit court lacked subject matter jurisdiction to act. Because the circuit court had subject matter jurisdiction to consider Renee's claims, we need not reexamine the court's authority to enforce its order, its authority to hold Chad in contempt, its authority

to remove Chad as trustee, or its authority to determine whether Chad breached his fiduciary duties. In regard to Chad's claim that the court abused its discretion when it removed him as trustee, Chad has not identified "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable." *See id.* Therefore, Chad has failed to establish that the circuit court abused its discretion.

### 4. Chad's Personal Liability for Disbursements from the Trust and for Renee's Attorney Fees

[¶33.]    Chad claims that he was acting in his capacity as trustee when Family Heritage distributed Renee's trust funds to purportedly pay Renee's share of the attorney fees incurred in the BankWest fee dispute by Gunderson Palmer and to Bangs McCullen. He further avers that he was acting in his capacity as trustee when he caused funds to be distributed from Renee's trust to Colin and Debra Heupel for Renee's share of the insurance proceeds improperly retained in the Family Trust. Additionally, Chad asserts that (1) the Trust authorizes the trustee to retain legal counsel and to pay the costs of litigation, (2) the expenditures benefited Renee's Share Trust, and (3) Family Heritage Trust, not Chad, approved the bills and made the disbursements.

[¶34.]    Under SDCL 55-3-13,

> A trustee is entitled to the repayment, out of the trust property, of all expenses actually and properly incurred by the trustee in the performance of his or her trust. The trustee is entitled to the repayment of even unlawful expenditures, if the expenditures were productive of actual benefit to the estate. Expenses in performance of the trust include those expenses actually and properly incurred in the exercise of the trustee's powers as described in the governing instrument, in any applicable court order, or in chapter 55-1A.

-14-

Further, under SDCL 15-17-38, "[t]he court may award attorneys' fees from trusts administered through the court[.]" "We review a trial court's ruling on the allowance or disallowance of costs and attorney fees under an abuse of discretion standard." *Johnson v. Miller,* 2012 S.D. 61, ¶ 7, 818 N.W.2d 804, 806 (quoting *Stratmeyer v. Engberg,* 2002 S.D. 91, ¶ 12, 649 N.W.2d 921, 925).

[¶35.] From our review, the record supports the circuit court's finding that Chad's actions were ultra-vires, without authority, and without court approval. In regard to the attorney fees distributed from Renee's Share Trust to Bangs McCullen and Gunderson Palmer purportedly for Renee's share of the BankWest fee dispute, the court found and the record supports that "Renee ultimately benefited from the BankWest fee litigation." However, the court further found that during the fee litigation, Chad was not acting in his capacity as co-trustee of the Family Trust or in his capacity as the co-trustee of Renee's trust. He was acting in his capacity as a beneficiary. At no point during the BankWest fee dispute did Bangs McCullen or Gunderson Palmer represent Renee's trust. Rather, Bangs McCullen and Gunderson Palmer incurred their fees while taking positions adverse to Renee. Therefore, under SDCL 55-3-13, Chad's attorney fees for the fee dispute were not "actually and properly incurred by the trustee in the performance of his or her trust."

[¶36.] Because Chad was not acting in his capacity as a trustee of Renee's Share Trust when he caused additional funds to be distributed from her trust, he has not established that he was "entitled to the repayment of even unlawful expenditures" that "were productive of actual benefit to the estate." *See id.* We

further conclude that the circuit court did not abuse its discretion when it declined to approve Chad's disbursement as a recovery of attorney fees under SDCL 15-17-38. The statute is discretionary, and Chad has not met his burden that the court abused that discretion.

[¶37.]     Chad also claims that the circuit court erred when it ordered Chad to personally pay Renee $3,500 in attorney fees. He asserts that the circuit court failed to address the factors governing the reasonableness of a fee award in a civil suit. *See City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D. 1994). On the contrary, although the circuit court first ordered Chad to pay Renee $3,500 in attorney fees in its June 2016 order, the court specifically considered the reasonableness of the attorney fee request in its April 2017 decision. The court examined this Court's factors and thereafter ratified its decision to order Chad to pay Renee $3,500 in attorney fees.

[¶38.]     Chad further disputes the court's decision to hold him personally liable for his fees incurred as co-trustee. According to Chad, the issue was never raised or litigated. He directs this Court to the transcript from the July 8, 2016 hearing. He claims that the transcript reveals no argument by the parties or ruling by the court suggesting that Chad would be held personally liable for the fees incurred as co-trustee. Thus, according to Chad, the court erred when it adopted Renee's proposed order submitted after the July 8 hearing and thereafter held Chad personally liable.

[¶39.]     Prior to the July 8 hearing, Renee petitioned the circuit court to order Chad to reimburse the trust for the funds misappropriated by him based on a breach of his fiduciary duty to Renee. The court held an evidentiary hearing to

determine whether Chad breached his fiduciary duty to Renee. Following that hearing, the court entered an order holding in abeyance the issues of Chad's obligation to personally reimburse the trust for unauthorized expenditures and the issue of Chad's obligation to pay Renee's attorney fees. The court ultimately found that Chad had breached his fiduciary duties and held him personally liable. From our review of the record, the issue of Chad's personal liability was raised and litigated.

[¶40.] Nonetheless, Chad further claims that the amounts disbursed from the trust—for his attorney fees to defend Renee's suit and for the expenses he incurred to travel to South Dakota—were properly chargeable to Renee's Share Trust under the trust documents and under SDCL 55-3-13. Article 12.1 of the Trust provides that "all expenses of type incurred by our successor trustee(s) in carrying out the duties under this trust shall be paid for from the trust." Further, SDCL 55-3-13 provides that a trustee may seek "repayment, out of the trust property, of all expenses actually and properly incurred by the trustee in the performance of his or her trust."

[¶41.] Here, the circuit court concluded that Chad did not incur the attorney fees in carrying out his duties under the trust. The court also found that Chad did not properly incur the expenses in the performance of the trust. Thus, neither South Dakota law nor the trust document entitles Chad to recover the attorney fees he incurred in defense of Renee's suit or the expenses he incurred to travel to South Dakota.

[¶42.] Lastly, Chad argues that the circuit court erred when it ordered him to personally pay Renee's attorney fees incurred in litigating her claim that Chad misappropriated trust funds. He claims that the court "neglected to make the necessary findings and conclusions[.]" He also restates his argument that the issue was not raised or litigated in the July 8 hearing.

[¶43.] First, the issue was raised and litigated. Renee petitioned the circuit court to require Chad to reimburse her attorney fees incurred as a result of Chad's breach of his fiduciary duties and disobedience of the court's orders. Chad opposed Renee's requested relief. The court ultimately ordered Chad to personally repay Renee her reasonable attorney fees and costs in the amount of $14,270 "as a sanction for violating the Court Orders and his Trust and acting without Court approval[.]" The court cited *Sazama*, 2007 S.D. 17, ¶ 27, 729 N.W.2d at 345.

[¶44.] Second, contrary to Chad's claim, the circuit court entered findings and conclusions. The court identified the factors to be considered in awarding attorney fees in a civil case as set forth in *Kelley*, 513 N.W.2d at 111. The court addressed the factors and concluded that Renee's fee request was reasonable. Therefore, on the arguments advanced by Chad, he has not met his burden of proving that the circuit court clearly erred or abused its discretion.

## Conclusion

[¶45.] This appeal does not concern the circuit court's subject matter jurisdiction over a trust, but rather the circuit court's authority to enforce an order. Based on our review of the record, the circuit court had authority to enforce its November 2015 order and did not clearly err when it found that Chad violated the

order. The court also did not err when it found that Chad breached his fiduciary duties as trustee of the Renee L. Hansen Share Trust. Chad has not met his burden of proving error in the court's decisions: (1) to remove him as trustee; (2) to hold him personally liable for the disbursements made from Renee's Share Trust; (3) to hold him personally liable for the attorney fees incurred in his defense of Renee's suit and for expenses incurred by him for his trips to South Dakota; and (4) to hold him personally liable for the payment of Renee's attorney fees.

[¶46.] We affirm the circuit court's orders and deny Chad's request for appellate attorney fees.

[¶47.] GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN, Justices, concur.