#30482-r-SPM
**2024 S.D. 81**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

THE ESTATE OF PAUL O'FARRELL, individually,
and, as a beneficiary of the family trust; and,
for the benefit of the Estate of Victoria
O'Farrell; SKYLINE CATTLE COMPANY,
a South Dakota corporation; & VOR, INC.,
a South Dakota corporation,                                    Plaintiffs and Appellants,

     v.

GRAND VALLEY HUTTERIAN BRETHREN,
INC., a South Dakota corporation, THE
RAYMOND AND VICTORIA O'FARRELL
LIVING TRUST, a South Dakota trust,                           Defendants and Appellees,

     and

KELLY O'FARRELL, an individual,
,                                                              Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT L. SPEARS
Judge

* * * *

ARGUED
APRIL 23, 2024
OPINION FILED **12/18/24**

* * * *

DANIEL K. BRENDTRO
MARY ELLEN DIRKSEN
BENJAMIN M. HUMMEL of
Hovland Rasmus Brendtro
   & Trzynka Prof. LLC
Sioux Falls, South Dakota            Attorneys for plaintiffs and
appellants.


LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota            Attorneys for appellees VOR, Inc.,
Revocable Trust, and Estate of
Victoria O'Farrell.


WILLIAM G. BECK
SETH A. LOPOUR
COURTNEY S. CHAPMAN of
Woods, Fuller, Shultz and Smith, P.C.
Sioux Falls, South Dakota

REED RASMUSSEN of
Siegel, Barnett & Schutz, LLP
Aberdeen, South Dakota            Attorneys for appellee Grand Valley
Hutterian Brethren, Inc.

#30482

MYREN, Justice

[¶1.]        Paul O'Farrell[1], individually, and ostensibly for the benefit of the Raymond and Victoria O'Farrell Living Trust (Trust), the Estate of Victoria O'Farrell (Estate), Skyline Cattle Co. (Skyline), and VOR, Inc. (VOR), appeals from the circuit court's denial of his request for change of circuit court judge, dismissal of his claims against all named defendants, and award of attorney fees.  We reverse Presiding Judge Stoltenburg's denial of the affidavit disqualifying Judge Spears.  We vacate all orders entered by Judge Spears in this case and remand for the appointment of a replacement judge.

## Factual and Procedural History

[¶2.]        Paul is one of Raymond and Victoria O'Farrell's five children.  Raymond and Victoria owned approximately 1,000 acres of farmland near Marvin, South Dakota.  In 2002, they created VOR to hold their farm assets, including approximately 1,000 acres of farmland.  Paul has lived on a portion of that land for many years and constructed a house and shop on the land.  Paul alleged he served as an officer of VOR for numerous years and that attempts to remove him as such, as well as other acts by VOR, were invalid.

[¶3.]        In 2011, Raymond and Victoria created the Trust and "deposited all (or most) of their assets" into the Trust, including their shares of VOR.  The Trust provided for each of their five children to receive a specified portion of land.  Paul

---

1.      Paul O'Farrell passed away during the pendency of this case.  Therefore, his estate has been named as a party in this matter.

alleged he was the primary beneficiary of the Trust, which named him as successor co-trustee in the event Raymond or Victoria was unable to serve.

[¶4.] Skyline is the entity through which Raymond, Victoria, and Paul conducted their farming business. Skyline rented and farmed land owned by VOR for many years. Paul has been the sole owner of Skyline since 2019.

[¶5.] There are currently five separate cases filed in Grant County involving some or all of the same parties to this action, and four have appeals pending before this Court. The cases are referred to as (1) Victoria's action against Raymond; (2) Victoria's probate proceeding; (3) Raymond's guardianship proceeding; (4) a declaratory judgment/tort action (this case); and (5) the eviction action. While these five cases contain some overlapping issues, none have been consolidated. None of the settled records contain a motion to consolidate any of the actions.[2] Consequently, we consider and resolve each case individually.

[¶6.] In Victoria's action, she initiated a lawsuit against Raymond and her son, Kelly O'Farrell, seeking to unwind certain actions taken by Raymond on behalf of VOR and the Trust, seeking to remove Raymond as trustee of the Trust, and seeking injunctive relief and damages for conversion and the tortious interference with her "relationship with, role in, and control of VOR." Judge Elshere was set to preside over this lawsuit, but Raymond filed an affidavit pursuant to SDCL 15-12-

---

2. At the close of oral argument before us, a Justice inquired of counsel whether the cases should be consolidated. Counsel for Paul indicated he believed the cases should be consolidated; counsel for Raymond appeared to agree; but, counsel for Grand Valley opposed consolidation at the circuit court level, citing the fact that Grand Valley is involved in only one of the five cases.

22 to disqualify her. In response to the affidavit, Presiding Judge Stoltenburg appointed Judge Spears in place of Judge Elshere.

[¶7.] Victoria died in 2022 while her lawsuit was pending. After Victoria's death, Paul filed a motion to intervene in that case. In an e-mail to Judge Spears, Paul's counsel (who no longer represents him) indicated that Paul had no objection to Judge Spears presiding over the case. The circuit court denied Paul's motion to intervene, and Victoria's counsel filed a notice of voluntary dismissal. Paul appealed and challenged the circuit court's denial of his motion to intervene and the validity of the voluntary dismissal. In an order issued concurrent with this opinion, we concluded that the voluntary dismissal was effective. (Appeal No. 30508).

[¶8.] In Victoria's probate proceeding, Raymond petitioned for an appointment as special administrator of Victoria's Estate, which Judge Elshere granted. Paul petitioned to have Raymond removed as special administrator and to have himself and his brother Lance appointed as special co-administrators. After Paul filed his petitions, Presiding Judge Stoltenburg entered an order reassigning the action to Judge Spears, noting that the reassignment was for judicial economy. The petitions filed by Paul are still pending. Over a year later, Paul filed an appeal from Judge Elshere's order appointing Raymond as the special administrator. In an order issued concurrent with this decision, we dismissed that appeal for lack of jurisdiction because it was not an appeal from a final order. (Appeal No. 30532).

[¶9.] Paul also sought the appointment of a guardian and conservator for Raymond—Raymond's guardianship proceeding. Paul alleged Raymond has been described by his family as "a person in need of protection" who has health problems

and a "history of alcohol abuse." Again, noting judicial economy, Presiding Judge Stoltenburg appointed Judge Spears in place of Judge Elshere. Raymond's guardianship proceeding is pending in the circuit court and is not before us on appeal.

[¶10.]       In this case—the declaratory judgment/tort action—Paul alleges a land sale and other actions and transactions were "legally ineffective because of a failure of notice, consent, capacity, authority, undue influence, and/or estoppel." The complaint alleges three broad causes of action: (1) declaratory judgment regarding alleged void and voidable acts, (2) rescission of a $3.2 million land sale, and (3) tort damages.

[¶11.]       In this action, Paul claimed that his brother Kelly manipulated their father and "engaged in other misconduct, in order to set in motion an improper and illegal set of maneuvers, all of which were designed to enrich [Kelly] at the expense of his parents" and himself. Paul alleged that in March 2022, Kelly "secretly began an orchestrated effort to alienate and isolate Raymond from his family, with the intent of thwarting various features of Raymond and [Victoria]'s Estate plan, and disrupting their farming operations." He also asserted that Kelly engaged in conduct that caused "substantial financial harm," including a sale of "$3.2 million worth of O'Farrell family farmland" to Grand Valley Hutterian Brethren, Inc. (Grand Valley) and the nonrenewal of Skyline's lease. Paul contended Kelly's actions caused financial harm to the Estate, the Trust, VOR, Raymond, and himself, and that Kelly's purported intent was to orchestrate Paul's disinheritance. Paul asserted Kelly's "scheme" interfered with Paul's business operations. Paul claimed

the purchase agreement regarding the farmland sold to Grand Valley was "kept secret" and "no authority was obtained for it via the probate process." He also claimed that VOR's attempts to non-renew Skyline's lease were carried out without proper authority.

[¶12.] After Paul commenced this lawsuit, Grand Valley and VOR commenced an action under SDCL chapter 21-16 to evict Paul and Skyline—the eviction action. The circuit court entered a judgment and order of eviction in that action and Paul and Skyline have appealed this ruling. (Appeal No. 30344).

[¶13.] Soon after the complaint was filed in the declaratory judgment/tort action, Presiding Judge Stoltenburg, again noting judicial economy, assigned the proceeding to Judge Spears in place of Judge Elshere. Daniel Brendtro, the attorney representing both Paul and Skyline, informally requested Judge Spears to disqualify himself in both this case and the guardianship action pursuant to SDCL 15-12-21.1, referencing a "connection" between Judge Spears' "campaign treasurer to parties or witnesses involved in these matters."[3] Raymond's counsel inappropriately submitted an objection to the informal request for change of judge on March 21, 2023.[4] In that objection, Raymond claimed Paul waived the right to seek removal of Judge Spears under SDCL 15-12-24, noting that in the

---

3. This informal request lists the guardianship proceeding and this action but does not specify whether the request is made by Paul, Skyline, or both.

4. We have recognized that "although opposing litigants are to receive copies of correspondence or be apprised of any communications, *they cannot contest the request*." *State v. Tapio*, 432 N.W.2d 268, 270 (S.D. 1988) (citing SDCL 15-12-21.1).

guardianship proceeding, Judge Spears had substantively ruled on a request submitted by Paul.

[¶14.]     That same day, Judge Spears denied the informal request and explained that he was presiding over other "closely related" cases and that in Victoria's action, Paul had waived the potential conflict with regard to Judge Spears' campaign treasurer, albeit through different counsel. Judge Spears also noted he had "heard or may have ruled on several of the allegations" in the other pending cases. Judge Spears concluded, "given the circumstances in all three files and it is my understanding that my Presiding Judge previously consolidated all of these files and I can be fair and impartial if I remain on all of the above cases, I will deny the informal request that I recuse myself."

[¶15.]     Skyline, through its officer Paul, then filed an affidavit for change of judge, pursuant to SDCL 15-12-22, in the present case. The affidavit stated: "Skyline has good reason to believe and does actually believe that [Skyline] cannot have a fair and impartial trial" before Judge Spears.

[¶16.]     Presiding Judge Stoltenburg then entered an order that appears to deny the request for change of judge as to both the guardianship proceeding and this case, even though the affidavit was not filed in the guardianship case. Judge Stoltenburg provided the following explanation for his denial:

> [T]he issues, parties and relief requested are so intertwined and related that judicial economy and efficiency requires that all cases be consolidated with one judicial officer [and]
> . . .
> Plaintiff/Petitioner has previously submitted motions, argument, and testimony to the assigned Judge on substantive issues and has waived his right to file an affidavit for change of judge pursuant to SDCL 15-12-24[.]

-6-

[¶17.] After the denial of the requested change of judge, VOR, the Estate, and the Trust together filed an answer, counterclaim, motion to dismiss, and motion for attorney fees. Kelly filed a separate answer and counterclaim, in which he asserted affirmative defenses, including failure to state a claim upon which relief can be granted, and asserted a counterclaim for barratry. Grand Valley filed a motion to dismiss pursuant to SDCL 15-6-12(b)(5).

[¶18.] The circuit court ultimately granted all the parties' motions to dismiss and granted the request for attorney's fees and costs against Paul and Skyline in the amount of $17,925.88.[5]

[¶19.] Paul appeals, raising four issues, including whether Presiding Judge Stoltenburg erred when he denied the affidavit for change of judge. Because we resolve the case on this issue, we need not address the other issues presented.

## Decision

[¶20.] A party to an action "in circuit court has the right to a change of judge so long as certain procedural requirements are met." *Legendary Loan Link, Inc. v. Larson*, 2017 S.D. 25, ¶ 7, 896 N.W.2d 267, 269 (citing SDCL ch. 15-12). "The purpose behind our peremptory recusal rules is to allow removal of a judge without stating any reason if a party entertains concern about a judge's impartiality." *Id.* ¶ 9 (citation omitted).

---

5. The circuit court issued a certification pursuant to SDCL 15-6-54(b) (Rule 54(b)) to allow for appeal, although not all issues were determined. The circuit court found the claims it adjudicated "bear no relationship to the remaining unadjudicated claims" and that Rule 54(b) certification was appropriate because of the time sensitive nature of the matter.

[¶21.]     "The process to obtain a change of judge is straightforward.  The party seeking the change must first informally request the judge to self-disqualify."  *Id.* ¶ 7 (citing SDCL 15-12-21.1).[6]  "If the judge declines the informal request, the party may file an affidavit for a change of judge."  *Id.* (citing SDCL 15-12-22).[7]

[¶22.]     "When an affidavit for change of judge has been properly filed, the judge cannot proceed any further in the action and is deemed disqualified 'unless otherwise ordered to proceed by the presiding judge of the circuit involved.' Further, 'the challenged judge has no jurisdiction to consider the propriety of the affidavit or to continue with the action.'"  *Id.* (citations omitted).

---

6.     SDCL 15-12-21.1 reads:

> Prior to filing an affidavit for change of judge, the party or his attorney shall informally request the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, to disqualify himself.  He shall not be required to state his reasons, but may if he desires. . . . If the judge or magistrate grants the request, he shall forthwith notify the presiding judge, who shall assign the case to some other judge or magistrate.  If the judge refuses the request, he shall forthwith notify in writing the parties or their attorneys.  Writing may include a letter, order, or dictation into the record.

7.     SDCL 15-12-22 reads:

> When entitled to do so, any party to an action, or his attorney of record, in any circuit or magistrate court may within the time prescribed by this chapter, file an affidavit as provided by this chapter seeking to disqualify the judge or magistrate who is to preside or is presiding in that action and *when properly filed that named judge or magistrate shall proceed no further in said action and shall thereupon be disqualified as to any further acts with reference thereto unless otherwise ordered to proceed by the presiding judge of the circuit involved.*

(Emphasis added.)

[¶23.] SDCL 15-12-32 establishes the procedure employed by the presiding judge of a circuit when presented with an affidavit.[8] It authorizes only two assessments by the presiding judge. First, the presiding judge must ascertain whether the affidavit was timely. *Id.* Second, the presiding judge must determine "that the right to file the affidavit has not been waived or is not otherwise legally defective[.]" *Id.* The rule does not provide the presiding judge with authority to deny the affidavit based on consideration of judicial economy or efficiency.

[¶24.] Here, no party contends that the affidavit did not comply with the statutes or was untimely. Consequently, the only remaining valid consideration was whether the right to file the affidavit had been waived. A party waives the right to disqualification of a judge by the "submission to a judge or magistrate of argument or proof in support of a motion or application, or upon trial[.]" SDCL 15-12-24.

[¶25.] Pursuant to SDCL 15-12-21.1, Paul first made his informal request to disqualify by letter to Judge Spears dated March 17, 2023. He filed the notice of

---

8.     SDCL 15-12-32 reads:

> The presiding judge of the circuit court or in his absence or disqualification as the judge sought to be changed, the senior judge of the circuit shall review the affidavit and certification, if any, and it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective, shall assign some other circuit judge or magistrate of that circuit as is appropriate to preside in such action, by filing an order of such appointment with the clerk of the court of the county wherein said action is pending. From the filing of such order the judge or magistrate therein designated shall have full power, authority and jurisdiction to proceed in the matter.

this request in *both* the declaratory judgment/tort action and the guardianship proceeding on March 20, 2023. In the guardianship proceeding, Paul had previously filed an affidavit in support of a pending application for waiver of filing of an evaluation report before submitting the informal disqualification request. However, in this declaratory judgment/tort action, Paul and Skyline filed the informal request and the affidavit for change of judge *before* any other submissions in the case.

[¶26.] Raymond appears to argue that because Paul submitted argument or proof in the guardianship action, that constitutes a waiver in this action. The guardianship action is a separate case, and possible waiver of a conflict in that action does not apply to this action. *See* SDCL 15-12-24 (limiting the waiver to the submission "of argument or proof in support of a motion or application" to a judge and noting that such waiver "shall continue until the final determination of *the action*" (emphasis added)). This rule does not refer to a waiver resulting from submissions in other related cases involving some of the same parties. *See, e.g.*, *Oksner v. Superior Ct. In & For Los Angeles Cnty.*, 40 Cal. Rptr. 621, 633 (Cal. Ct. App. 1964) (noting that the party seeking the judge's disqualification did so timely, even though the judge had heard matters in a related but different case, and explaining that different parties were involved in the prior proceeding and that the statute referred to "'any one action or special proceeding', not to any series of actions[]" and concluding the fact that a party "had successfully challenged the same Judge in two other separate actions is immaterial"); *State v. Lohnes*, 432 N.W.2d 77, 82 (S.D. 1988) ("Where a remanded matter is a continuation of the

original proceeding, rather than a new one, the judge may not be changed by way of affidavit.").

[¶27.] In this case, Paul and Skyline followed the procedure for seeking a change of judge. *See Legendary Loan Link, Inc.*, 2017 S.D. 25, ¶¶ 7–8, 896 N.W.2d at 269 (citing SDCL ch. 15-12). Neither Paul nor Skyline presented any "argument or proof in support of a motion or application" in this action before implementing the procedure for a change of judge. *Id.* ¶ 8. Presiding Judge Stoltenburg erred in finding there was a waiver of the right to seek a change of judge in this case.[9]

[¶28.] Upon the filing of the affidavit, Judge Spears was disqualified from any further acts related to this case. *See id.* ¶ 7; SDCL 15-12-22 (directing that once a properly filed affidavit seeking a change of judge is filed, the disqualified judge "shall proceed no further in said action and shall thereupon be disqualified as to any further acts"); *see also State v. Peterson*, 531 N.W.2d 581, 584 (S.D. 1995) ("Once disqualified by the filing of an affidavit for change of judge, the challenged judge has no jurisdiction to consider the propriety of the affidavit or to continue with the action. We see no alternative, therefore, but to reverse and remand for a new trial before another circuit judge."). In these circumstances, the presiding judge had no authority to do anything other than appoint a replacement judge. Judge Spears was disqualified and unable to conduct any further proceedings.

---

9. Paul also argues there was no waiver because *Skyline* (not Paul) filed the affidavit for change of judge, and *Skyline* had not been a party to the proceeding in which Paul waived Judge Spears' conflict. However, as to "parties who are united in interest or representation[,]" SDCL 15-12-23 states that "the filing of [an] affidavit by one party is deemed to be filed by all of such parties."

[¶29.] Although the dissenting writing asserts that this Court's directive in *Peterson* is based on a "fatal flaw," suggesting that the operative language in SDCL 15-12-22 stems from this Court's rules rather than from statutes enacted by the Legislature, such is not the case. The directive in SDCL 15-12-22 that the judge for whom an affidavit has been filed "shall proceed no further in said action and shall thereupon be disqualified as to any further acts with reference thereto" was enacted by the Legislature in 1927. *See* 1927 Sess. Laws ch. 89, § 1.[10] In addition, although the prior provision adopted by Court rule, which refers to the judge disqualified via affidavit losing "all jurisdiction therein" was not included in this Court's 1975 revisions to this chapter, the still-existing reference in SDCL 15-12-32 to the newly assigned judge having "full power, authority and *jurisdiction* to proceed in the matter" is not attributed to a Court rule. *See* SDC 1939 § 33.1214 (noting that this statute is part of Chapter 89 of the 1927 session laws, "revised and amplified for separation of substantive law from rule of court relating to same subject matter").

[¶30.] In any event, even if the statutory directives in SDCL chapter 15-12 do not impact the subject matter jurisdiction of the circuit court in general, this Court has consistently abided by the *legislative* directive that a judge disqualified via an affidavit shall no longer have the authority to act in the case at issue. *See, e.g.,*

---

10. Notably, the process by which a litigant is authorized to obtain a change of judge by submitting an affidavit stating that he cannot obtain a fair and impartial trial before such a judge has been in place prior to our statehood. *See* 1877 Compiled Laws of Dakota Territory, Justices' Code, ch. 1, § 6045 (directing the procedure in civil proceedings); 1877 Compiled Laws of Dakota Territory, Criminal Procedure, ch. 5, § 7312 (directing the procedure in criminal proceedings).

*Peterson*, 531 N.W.2d at 583; *Legendary Loan Link, Inc.*, 2017 S.D. 25, ¶ 7, 896 N.W.2d at 269; *State v. Hirning*, 2020 S.D. 29, ¶ 10, 944 N.W.2d 537, 540.

[¶31.] Finally, the suggestion in the other dissenting writing that the presiding judge's error in failing to reassign the case does not require a reversal because "Paul failed to present any facts showing actual bias or prejudice, or other grounds for disqualification of Judge Spears" would nullify the language in SDCL 15-12-26. *See* SDCL 15-12-26 (stating that "[i]t shall not be necessary to state in [the] affidavit the ground or reason for such belief"). This approach suggested by the dissent would also be contrary to prior decisions of this Court, holding that no such showing can be required. *See State v. Tapio*, 432 N.W.2d 268, 270–71 (S.D. 1988) (noting that proof of prejudice is not required and reversing a trial court's decision to require an affiant, whose affidavit disqualifying the judge was challenged by the opposing party, to show, under an objective standard, that he could not have a fair and impartial trial before the judge); *State v. Palmer*, 57 N.W. 490, 491 (S.D. 1894) (concluding that the circuit court erred by requiring a party who had filed an affidavit in accord with governing statute to satisfy the court that "the judge was biased or prejudiced against him"); *see also State v. Burgers*, 1999 S.D. 140, ¶ 13, 602 N.W.2d 277, 280 (noting that "[t]he purpose behind our peremptory recusal rules is to allow removal of a judge without stating any reason if a party entertains concern about a judge's impartiality").

[¶32.] The error at issue in this appeal is different than other types of judicial errors that may not require a reversal absent a showing of prejudice. Unlike errors involving the misapplication of the law, erroneous factual findings, or an abuse of

discretion exercised by a judge lawfully presiding over a case, the failure to reassign the case to another judge here resulted in a summary judgment being entered by a judge who was properly *disqualified* under SDCL chapter 15-12 "as to any further acts" in the case. SDCL 15-12-22. As such, we vacate all orders entered by Judge Spears in this case following the filing of the affidavit and reverse the presiding judge's order denying the change of judge. On remand, this case must be reassigned to a different judge accordingly.

[¶33.]        KERN and DEVANEY, Justices, concur.

[¶34.]        JENSEN, Chief Justice, concurs in part and dissents in part.

[¶35.]        SALTER, Justice, dissents.

JENSEN, Chief Justice (concurring in part and dissenting in part).

[¶36.]        I agree that the presiding judge erred in denying the affidavit for change of judge, but I dissent from the majority opinion's decision to reverse and remand this case for the assignment of a new judge. Instead, I would address the merits of the court's judgment of dismissal.

[¶37.]        SDCL 15-12-22 provides in relevant part, "when [a preemptory affidavit is] properly filed that named judge or magistrate shall proceed no further in said action and shall thereupon be disqualified as to any further acts with reference thereto *unless otherwise ordered to proceed by the presiding judge of the circuit involved.*" (Emphasis added). *See Peterson v. Burns*, 2001 S.D. 126, ¶ 30, 635 N.W.2d 556, 567–68 ("We should not adopt an interpretation of a statute that renders the statute [or part of it] meaningless when the Legislature obviously passed it for a reason."). In this case, after reviewing Paul's affidavit, the presiding

-14-

judge determined Paul had waived his right to file an affidavit for change of judge and denied his request. Regardless of whether the presiding judge's determination was erroneous, the automatic disqualification in SDCL 15-12-22 no longer applied to Judge Spears. Judge Spears was authorized to proceed under the rule once the presiding judge determined Paul was not entitled to file an affidavit for change of judge.

[¶38.] We should review the presiding judge's decision to deny the preemptory affidavit under SDCL 15-12-32. SDCL 15-12-32 provides in relevant part, "[t]he presiding judge of the circuit court . . . shall review the affidavit and certification, if any, and it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective, shall assign some other circuit judge or magistrate of that circuit as is appropriate to preside in such action[.]" If these two conditions are met, the presiding judge must assign a different judge. SDCL 15-12-32. While I agree that the presiding judge erred in considering judicial economy and in determining that the right to file an affidavit had been waived in this specific case, the error under SDCL 15-12-32 does not require reversal.

[¶39.] The Court's harmless error rule in civil cases is set forth in SDCL 15-6-61, and provides in part, that "no error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *See also Voorhees Cattle Co., LLP v. Dakota*

*Feeding Co., LLC*, 2015 S.D. 68, ¶ 17, 868 N.W.2d 399, 408 ("Error is prejudicial if it 'most likely has had some effect on the verdict and harmed the substantial rights of the moving party.'" (citation omitted)).

[¶40.] The majority's resolution of this case ignores our harmless error rule, which requires a showing of actual prejudice for *any* error in a civil case before reversing a final judgment.[11] *Id.* The decision fails to provide any sound legal basis for elevating the preemptive affidavit process in SDCL chapter 15-12 to create a presumption of prejudice. Such a presumption converts the preemptive affidavit for a change of judge from "what is essentially a 'matter of grace,' into a trump card which would later destroy the validity of the entire proceeding." *See Taliaferro v. Taliaferro*, 921 P.2d 21, 23 (Ariz. 1996). *See also United States v. Martinez-Salazar*, 528 U.S. 304, 311, 120 S. Ct. 774, 779, 145 L. Ed. 2d 792 (2000) (noting that a preemptory challenge of a juror in the criminal context was "already venerable in Blackstone's time. . . . But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension.").

---

10. Contrary to the majority's view, requiring a showing of actual prejudice for the review of the affidavit by the presiding judge does not "nullify" SDCL 15-12-26. In this case, the preemptory affidavit process worked just as it should have under SDCL 15-12-26 and SDCL 15-12-22. Upon receipt of the affidavit, Judge Spears did not take further action and considered himself disqualified until he was directed to proceed after the presiding judge reviewed the affidavit pursuant to SDCL 15-12-32. The review of the affidavit by the presiding judge and consideration of reassignment under SDCL 15-12-32 is a different matter and we have not previously addressed the question of whether an error by the presiding judge requires reversal without a showing of prejudice. The narrow review of timeliness and waiver by the presiding judge should not be treated any differently than any other error on appeal.

[¶41.]    The affidavit submitted by Paul failed to present any facts showing actual bias or prejudice, or other grounds for disqualification of Judge Spears.[12]  In the absence of such a showing, Paul cannot establish his substantial rights have been harmed.  The Arizona Supreme Court in *Taliaferro* refused to create a presumption of prejudice in cases involving the process of filing a preemptory affidavit for a change of judge, stating that "errors [in finding a waiver or the untimely filing of an affidavit] are not well suited to an appeal after final judgment." *Taliaferro*, 921 P.2d at 23.  I agree.  While intermediate appeals are discretionary under SDCL 15-26A-3(6), if the presiding judge errs in failing to reassign a case under SDCL 15-12-32, a request for discretionary review should be made before submitting the case to the assigned judge, unless there is a showing of actual prejudice on the record.

[¶42.]    Because Paul has failed to show prejudice, the error was harmless on this record and I would not reverse.

---

12.    Paul alternatively argues in his brief that Judge Spears' impartiality could reasonably be questioned because his judicial campaign treasurer was employed by a law firm representing an adverse party and was previously an employee of Judge Spears.  Although Paul raised this concern informally in a letter requesting Judge Spears to recuse himself, as required by SDCL 15-12-21.1 before filing an affidavit for a change of judge, he did not file a motion with additional facts to allow Judge Spears to formally consider disqualification on this basis.  A judge has discretion to decide "whether the facts and circumstances fit within the disqualifying criteria." *Marko v. Marko*, 2012 S.D. 54, ¶ 18, 816 N.W.2d 820, 826.  The limited facts, without more, do not objectively demonstrate the appearance of impartiality that would have required disqualification under the Code of Judicial Conduct. *See id.*

SALTER, Justice (concurring in part and dissenting in part).

[¶43.]     On its face, the Court's opinion appears to reflect a certain sense of responsiveness; it provides a remedy for noncompliance with the disqualification procedure set out in SDCL chapter 15-12. Unfortunately, the Court's decision does much more than that by retroactively divesting the circuit court of its lawful general jurisdiction. Paul and Skyline did not seek this relief; nor is it justified. At most, the presiding judge misapplied our court rules that allow parties to unilaterally disqualify a judge and ask for reassignment. With respect, I write to add my views to the discussion.

[¶44.]     "South Dakota circuit courts are courts of general jurisdiction, and we have held that our Constitution confers broad authority upon circuit courts to 'hear all civil actions.'" *Bingham Farms Tr. v. City of Belle Fourche*, 2019 S.D. 50, ¶ 14, 932 N.W.2d 916, 920 (quoting *Christians v. Christians*, 2001 S.D. 142, ¶ 45, 637 N.W.2d 377, 386 (Konenkamp, J., concurring specially)); *In re Heupel Family Revocable Tr.*, 2018 S.D. 46, ¶ 25, 914 N.W.2d 571, 578 (same); *March v. Thursby*, 2011 S.D. 73, ¶ 16, 806 N.W.2d 239, 243 (same); *see also* S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, *circuit courts of general jurisdiction* and courts of limited original jurisdiction . . . .") (emphasis added).

[¶45.]     The concept of subject matter jurisdiction is viewed broadly with reference to a class of cases, not narrowly on a case-by-case basis. The correct inquiry focuses upon "'a court's competence to hear and determine cases of the general class to which proceedings in question belong; the power to deal with the

general subject involved in the action;' and 'deals with the court's competence to hear a particular category of cases.'" *Heupel*, 2018 S.D. 46, ¶ 25, 914 N.W.2d at 578 (quoting *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 14, 729 N.W.2d 335, 342).

[¶46.]     A circuit court's authority to exercise its general subject matter jurisdiction and act "is conferred solely by constitutional or statutory provisions." *Cable v. Union Cnty. Bd. of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 20, 769 N.W.2d 817, 825 (quoting *Application of Koch Expl. Co.*, 387 N.W.2d 530, 536 (S.D. 1986)).  In other words, a circuit court's jurisdiction—and any judicial effort to ascertain subject matter jurisdiction—derives from the text of our Constitution and the statutes enacted by the Legislature.

[¶47.]     The contemporary version of the Chapter 15-12 disqualification-by-affidavit rule is not constitutional or statutory.  It is, instead, comprised of court rules.  Though a forerunner procedure was originally created by the Legislature in 1927, *see* 1927 S.D. Sess. Laws ch. 89, §§ 1-7, the Chapter 15-12 procedure has been exclusively regulated by court rule since at least 1975.

[¶48.]     But our authority to promulgate rules is circumscribed:

> The Supreme Court shall have general superintending powers over all courts and may make rules of practice and procedure and rules governing the administration of all courts.  The Supreme Court by rule shall govern terms of courts, admission to the bar, and discipline of members of the bar.  These rules may be changed by the Legislature.

S.D. Const. art. V, § 12.

[¶49.]     Surely, the Court's decision here vacating the circuit court's orders on the strength of SDCL chapter 15-12's rules indicates something much more

muscular than "general superintending powers" or "rules of practice and procedure and . . . administration of all courts." *Id.* By fashioning its own remedy for noncompliance with SDCL chapter 15-12, the Court has attributed jurisdictional significance to these rules and exalted our rule-making authority beyond its constitutional limit.

[¶50.]    Central to a correct understanding of the SDCL chapter 15-12 judicial disqualification-by-affidavit procedure is the notion that it is *not* designed to serve as a method for ensuring the fairness and impartiality of a trial judge. That procedure is different and implicates the Canons of Judicial Conduct set out in the appendix to SDCL chapter 16-2. The Canons generally require a judge's recusal or disqualification "whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply." *Marko v. Marko*, 2012 S.D. 54, ¶ 20, 816 N.W.2d 820, 826 (quoting Canon 3E(1) commentary); *see also O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 42, 876 N.W.2d 486, 502 (describing disqualification under the Canons of Judicial Conduct as "[a] separate avenue for disqualification").

[¶51.]    The procedure set out by court rule in SDCL chapter 15-12, on the other hand, is not connected to the Canons of Judicial Conduct. *See* SDCL 15-12-37 ("A judge or magistrate having knowledge of a ground for self-disqualification under the guidelines established by Canon 3E shall not, unless Canon 3F is utilized, await the filing of an affidavit but shall remove himself on written motion[.]"). Known somewhat irreverently as the "one-bump rule," the Chapter 15-12 procedure has become firmly entrenched in litigation practice across the state and allows a party

to disqualify a judge one time with nothing more than a subjective statement "that the party making such affidavit has good reason to believe and does actually believe that such party cannot have a fair and impartial trial before the named judge or magistrate." SDCL 15-12-26; *see State v. Fuller*, 2024 S.D. 72, ¶ 50 n.12, ___ N.W.3d ___, ___ n.12 (contrasting SDCL 15-12-26 disqualification with Canon 3E(1) disqualification).

[¶52.] As a result, the denial—correct or erroneous—of a request to disqualify under the Chapter 15-12 procedure does not mean parties like Paul or Skyline face an unfair judge—but, simply, a judge they do not want. And viewed in this way, the text of the rule at SDCL 15-12-22 that requires a trial judge to "proceed no further" until the presiding judge has determined the merits of the request to disqualify cannot bear the jurisdictional weight the Court places upon it. Rather, the rule simply commands the judge to wait while the issue of disqualification is resolved.

[¶53.] The principal failing of the Court's opinion is that it confuses this "proceed no further" language with subject matter jurisdiction. But they are very different. The "proceed no further" language addresses only the administrative authority of a circuit presiding judge to assign or "unassign" a single case as part of the SDCL chapter 15-12 procedure—not the authority of a court to determine an entire class of case, which is a matter reserved for statutes and the Constitution.

[¶54.] But as the Court notes, our decision in *State v. Peterson*, 531 N.W.2d 581 (S.D. 1995), says otherwise. In *Peterson*, we reversed an otherwise final jury verdict on the sole basis that the circuit court judge who presided over the trial had not forwarded an SDCL chapter 15-12 affidavit to the presiding judge. 531 N.W.2d

at 584. However, a close reading of *Peterson* reveals a fatal flaw—it incorrectly viewed the Chapter 15-12 rules as "our statutes" and held specifically:

> Once [the defendant] filed his affidavit, [the circuit court judge] had no choice but to immediately stop the proceedings and await [the presiding judge's] decision *pursuant to statute*. [The circuit court judge] had no authority to decide on his own whether the affidavit was proper; with the filing of the affidavit his disqualification was automatic and mandatory. SDCL 15-12-22. As a consequence of continuing with the case without jurisdiction, all subsequent orders and judgments are void.

531 N.W.2d at 583 (emphasis added) (citations omitted).

[¶55.]     The difference between court rules and statutes is not merely semantic or hyper-technical. As noted, our authority to promulgate rules, though important, is limited and does not reach so far as to allow the judicial branch to originate, or, more to the point here, terminate subject matter jurisdiction. *See* S.D. Const. art. V, § 12 (authorizing the Supreme Court to make "rules of practice and procedure and rules governing the administration of all courts[,] . . . terms of courts, admission to the bar, and discipline of members of the bar").

[¶56.]     I do agree with the Court and the Chief Justice that the presiding judge here did not correctly apply the rules concerning waiver. However, the effect of this error must be placed in its proper context. The error was not so serious that it divested the circuit court of its lawful jurisdiction, and, barring any showing of prejudice, the circuit court's decisions should be reviewed on their merits.